630 F.2d 1131
 CHELSEA COMMUNITY HOSPITAL, SNF, and Chelsea Community
Hospital, a Michigan Nonprofit Corporation,
Plaintiffs-Appellants,
v.
MICHIGAN BLUE CROSS ASSOCIATION, Blue Cross Association, and
F. David Mathews, Secretary of Health, Education
and Welfare, Defendants-Appellees.
 No. 77-1752.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 4, 1980.
Decided Sept. 25, 1980.
 
 Alan G. Gilchrist, Paul M. Shirilla, Frimet, Goren & Bellamy, Southfield, Mich., for plaintiffs-appellants.
 James K. Robinson, U. S. Atty., Detroit, Mich., William Z. Elliott, Robert E. Kopp, Barbara Allen Babcock, Atty., General Litigation Sec., Civil Division, Dept. of Justice, Washington, D. C., for defendants-appellees.
 Before EDWARDS, Chief Judge, MERRITT, Circuit Judge, and PECK, Senior Circuit Judge.
 JOHN W. PECK, Senior Circuit Judge.
 
 
 1
 This case raises the vexing question whether Congress in 1965 intended to preclude judicial review of the procedures adopted by the Secretary of Health, Education and Welfare (the Secretary) for reimbursing providers of Medicare services for their costs incurred. We hold that Congress did not so intend, and that it was therefore error for the district court to dismiss appellants' action for lack of jurisdiction.
 
 
 2
 Appellants are Chelsea Community Hospital and Chelsea Community Hospital, SNF ("skilled nursing facility"). At the times material to this action, Chelsea Medical Center, a Michigan co-partnership, was the legal owner of the land and buildings occupied by the two health-care institutions.
 
 
 3
 Under Part A of the Medicare Act, 42 U.S.C. § 1395c et seq., eligible health-care institutions ("providers" in the language of the Act) may agree not to charge Medicare beneficiaries for services rendered, but rather to receive payment from the Medicare trust fund directly. 42 U.S.C. §§ 1395d & 1395cc (1976). Such providers may recoup only the "reasonable costs" actually incurred in furnishing services to beneficiaries. 42 U.S.C. §§ 1395f(b)(2) & 1395x(v)(1) (1976). A provider may agree with the Secretary to have this reimbursement process handled by a fiscal intermediary acting as the Secretary's agent. 42 U.S.C. § 1395h (1976) (later amended). Appellees Blue Cross Association of Michigan (MBCA) and Blue Cross Association (BCA) are such fiscal intermediaries, empowered through their agreements with the Secretary to determine the amounts of reimbursements to providers which are proper under the Act and under the regulations promulgated pursuant to the Act.
 
 
 4
 In the spring of 1972, Michigan Blue Cross determined that appellants and Chelsea Medical Center (appellants' landlord) were "related organizations" in part or all of the years 1970, 1971, and 1972. This meant that under HEW regulations, only the Medical Center's cost of owning the providers' land and buildings could be allocated to the reasonable costs of health care for Medicare beneficiaries; the providers' considerably higher cost of leasing these premises from the Medical Center would not be so allocable. The purpose of this regulation, obviously, was to prevent providers from inflating their "actual costs" by renting their property from legal alter-egos.
 
 
 5
 Appellants contested both Michigan Blue Cross's finding that appellants and the Medical Center were under common control and Blue Cross's interpretation of HEW's regulations concerning related organizations. In February of 1975 appellants aired their objections to MBC's determinations in an administrative hearing held before a BCA hearing officer. The hearing officer's findings and conclusions were adverse to the providers, who brought an action in the district court seeking review of this administrative decision.
 
 
 6
 The providers' complaint based jurisdiction on 28 U.S.C. § 1331 (federal question) and 5 U.S.C. § 702 (Administrative Procedures Act). The district court held that neither statute granted district-court jurisdiction of Medicare-provider reimbursement disputes; appellees' motion for summary judgment was granted. Since we hold today that the district court did have jurisdiction of appellants' action, we reverse without reaching the merits of the constitutional arguments raised by appellants both here and in the district court. It is enough to note now that these arguments are not frivolous; appellants have raised the very thorny question whether the Secretary may delegate final adjudicatory power to a private body, particularly if exercise of that power is not subject to substantive judicial review. This is at best an area where "(t)he case law has not crystallized any consistent principles, either in the federal courts or in the state courts." 1 K. Davis, Administrative Law Treatise 193 (2d ed. 1978). We therefore find colorable appellants' claim that such a delegation deprives them of the legal process which they are due.
 
 I. DISTRICT COURT JURISDICTION
 
 7
 The question whether the Administrative Procedures Act conferred jurisdiction on the district court can be resolved with comparative ease. Under the Supreme Court's holding in Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), and under our own rule as stated in Bramblett v. Desobry, 490 F.2d 405 (6th Cir. 1974) (per curiam), the APA is not an independent basis for jurisdiction. The present jurisdictional question, therefore, is solely whether the district court had "federal-question" jurisdiction under 28 U.S.C. § 1331. The district court, in holding that it did not, relied on 42 U.S.C. § 405(h) (1970), which provides:
 
 
 8
 The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 to recover on any claim arising under this subchapter.[1]
 
 
 9
 This subsection, part of the Social Security Act, is adopted in the Medicare Act "to the same extent as (it is) applicable." 42 U.S.C. § 1395ii (1976). How far § 405(h) is applicable to Medicare-provider reimbursement disputes is a tortured question. Section 405(h) purports to bar judicial review of the Secretary's actions "except as herein provided." Prior to 1972, the Medicare Act's numerous review provisions did not explicitly establish procedures for reviewing provider reimbursements.[2] Therefore, if literally construed, § 405(h) barred all judicial review of the provider-reimbursement decisions which are the subjects of this action.
 
 
 10
 The central question of this case is whether such a literal construction comports with Congressional intent, insofar as that intent can be divined. It is settled that "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." Abbott Laboratories v. Gardner, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) (quoting Rusk v. Cort, 369 U.S. 367, 380, 82 S.Ct. 787, 794, 7 L.Ed.2d 809 (1962)). See also Association of Data Processing Service Orgs. v. Camp, 397 U.S. 150, 157, 90 S.Ct. 827, 831, 25 L.Ed.2d 184 (1970) ("There is no presumption against judicial review and in favor of administrative absolutism . . . unless that purpose is fairly discernible in the statutory scheme.").
 
 
 11
 Subsection 405(h) is part of two statutory schemes-the Social Security Act and, by reference, the Medicare Act. The subsection's purpose within the Social Security Act was considered in Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). In Salfi, Justice Rehnquist wrote:
 
 
 12
 That the third sentence of § 405(h) is more than a codified requirement of administrative exhaustion is plain from its own language, which is sweeping and direct and which states that no action shall be brought under § 1331, not merely that only those actions shall be brought in which administrative remedies have been exhausted.
 
 
 13
 422 U.S. at 757, 95 S.Ct. at 2463. Yet in holding that § 405(h) precluded exercise of federal-question jurisdiction of social security cases, the Court was careful to distinguish Johnson v. Robison, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). Robison held that a statutory provision very similar to § 405(h) did not preclude judicial review of the actions of the Veterans' Administrator; the Court found Robison inapposite largely because
 
 
 14
 (Robison) was expressly based, at least in part on the fact that if (the provision challenged in Robison) reached constitutional challenges to statutory limitations, then absolutely no judicial consideration of the issue would be available. Not only would such a restriction have been extraordinary, such that "clear and convincing" evidence would be required before we would ascribe such intent to Congress, 415 U.S., at 373, 94 S.Ct., at 1168, but it would have raised a serious constitutional question of the validity of the statute as so construed. Id. at 366-367, 94 S.Ct., at 1165. In the present case, the Social Security Act itself provides jurisdiction for constitutional challenges to its provisions. Thus the plain words of the third sentence of § 405(h) do not preclude constitutional challenges. They simply require that they be brought under jurisdictional grants contained in the Act, and thus in conformity with the same standards which are applicable to nonconstitutional claims arising under the Act.
 
 
 15
 422 U.S. at 762, 95 S.Ct. at 2465.
 
 
 16
 We believe that availability of judicial review under the Social Security Act was crucial to the Court's interpretation of § 405(h) in Salfi. As Justice Powell later wrote, Salfi "merely adhered to the well-established principle that when constitutional questions are in issue, the availability of judicial review is presumed . . . ." Califano v. Sanders, supra, 430 U.S. at 109, 97 S.Ct. at 986. It is similarly the consensus of the Circuits of the Court of Appeals which have considered the reviewability of Medicare providers' pre-1973 claims that the grant of review jurisdiction within the Social Security Act molded the Supreme Court's approach to Salfi. Humana, supra note 2, 590 F.2d at 1076. See also Trinity Memorial Hosp., Inc. v. Associated Hosp. Serv., Inc., 570 F.2d 660, 665-666 (7th Cir. 1977); South Windsor Convalescent Home, Inc. v. Mathews, 541 F.2d 910, 913-914 (2d Cir. 1976); St. Louis Univ. v. Blue Cross Hosp. Serv., 537 F.2d 283, 291-292 (8th Cir.), cert. denied, 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976).
 
 
 17
 In each of these cases, jurisdiction of a Medicare-provider reimbursement dispute was held to lie (either partly or exclusively) with the Court of Claims. The nettlesome constitutional question of the extent of the power of Congress to preclude all review of reimbursement disputes was avoided by the Court of Claims' ready exercise of jurisdiction. See, e. g., Overlook Nursing Home, Inc. v. United States, 556 F.2d 500, 502 (Ct.Cl.1977) ("We continue to hold that Congress did not preclude judicial consideration in any court of a provider's reimbursement rights, when it provided against judicial review of a social security beneficiary's claims, except in a single specified channel." (emphasis added)). Thus the Court of Claims mooted another equally nettlesome question whether the Court of Appeals may circumvent a possibly unconstitutional preclusion-of-review statute by "holding" that the Court of Claims may exercise review jurisdiction. See Dr. John T. MacDonald Found., Inc. v. Califano, 571 U.S. 328, 331 n. 4 (5th Cir.) (en banc), cert. denied, 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978) ("Can they do this?").
 
 
 18
 The ironies inherent in this situation surfaced in MacDonald, in which the Fifth Circuit held that § 405 precluded all review, 571 F.2d at 331, but that such a preclusion was saved from probable unconstitutionality by the acceptance of jurisdiction by the Court of Claims, which (contrary to the 5th Circuit's interpretation) had held that § 405(h) did not preclude any court's review of Medicare disputes.
 
 
 19
 We do not find such reasoning attractive or persuasive. If § 405(h) does apply to the present controversy, it is binding on all courts; the plain language of § 405(h) provides that "(n)o findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided" (emphasis added). We could not in good conscience hold this section applicable and still transfer the present case to the Court of Claims; however, we do not think that § 405(h) is applicable in any way to pre-1973 provider-reimbursement claims. Salfi is distinguishable: the statutory review provision present in Salfi, and essential to Salfi 's logic, is missing here. This is the interpretation adopted by the Court of Claims. See, e. g., St. Elizabeth Hosp. v. United States, 558 F.2d 8, 11 (Ct.Cl.1977); Whitecliff, Inc. v. United States, 536 F.2d 347, 350-351, 210 Ct.Cl. 53 (1976), cert. denied, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977).
 
 
 20
 We adopt the view of the Court of Claims, for it is a "cardinal principle" that we should seek statutory constructions which avoid constitutional doubts, Johnson v. Robison, supra, 415 U.S. at 366-367, 94 S.Ct. at 1165; St. Louis Univ., supra, 537 F.2d at 291. It would raise grave constitutional doubts if we held that the Secretary had unreviewable discretion in reimbursing Medicare providers, particularly if this discretionary authority was delegable to private parties. See United States v. Aquavella, 615 F.2d 12, 18 (2d Cir. 1979); South Windsor, supra, 541 F.2d at 913.
 
 
 21
 We therefore hold § 405(h) inapplicable to pre-1973 Medicare-provider reimbursement actions. This holding does not do violence to Congressional intent, for the requisite "clear and convincing evidence" of intent to preclude review is lacking. Section 405(h) is incorporated into the Medicare Act "as applicable." 42 U.S.C. § 1395ii (1976); St. Louis Univ., supra, 537 F.2d at 292. The subsection does not have a meaningful application in a case where no statutory review mechanism is available, for the purpose of § 405(h), following Salfi, is "simply the enforcement of the (42 U.S.C.) Section 405(g) procedures and prerequisites to judicial review." Whitecliff, Inc. v. United States, supra, 536 F.2d at 350.
 
 
 22
 Congress's failure to include the review provisions of 42 U.S.C. § 405(g) in the Medicare Act along with § 405(h) is not determinative; § 405(g) was adopted by reference in various other parts of the Act. See 42 U.S.C. §§ 1395ff (1970), 1395mm(f) (Supp.II 1972) (later amended). The relevant inquiry is, then, whether the early lack of a specific provider-reimbursement appeals mechanism demonstrates Congressional volition or omission.
 
 
 23
 We cannot believe that Congress intended in 1965 that Medicare providers would be "entitled" to whatever reimbursement the Secretary (or fiscal intermediary) granted, be it high[3] or low, fairly or unfairly set. The Medicare Act does not, of course, show any legislative intent to aid providers of care for their own sakes. E. g., Green v. Cashman, 605 F.2d 945, 946 (6th Cir. 1979). The Congressional concern was rather for the Act's beneficiaries. Id. Yet making provider reimbursements unreviewable would doubtless chill the provision of care to beneficiaries, or perhaps worse, would encourage providers to cheapen the care given to Medicare patients. More scrupulous providers might choose to offset insufficient Medicare reimbursements by charging higher fees to non-Medicare patients. This would contravene one objective of the Act, which is that "the costs of services of (sic ) individuals covered by the program will not be borne by individuals not covered . . . ." S.Rep.No. 89-404, 89th Cong., 1st Sess., as reprinted in 1 (1965) U.S. Code Cong. & Admin. News, pp. 1943, 1976.
 
 
 24
 To pull against these considerations, the agency harnesses that old workhorse, administrative convenience: we are told that given the complexity of provider reimbursements, "Congress reasonably assumed that to permit judicial review of the Secretary's determinations would unduly burden the already considerable administrative task." Judicial review is always inconvenient for administrators, as it is for everyone else involved. If administrative convenience were enough to destroy the presumption favoring judicial review of administrative action, that presumption would be a sham. Conjuring administrative inconvenience cannot "clearly and convincingly" show a legislative intent to preclude review.
 
 II. SCOPE AND MANNER OF JUDICIAL REVIEW
 
 25
 Appellants' complaint sought two alternative remedies: the first was a judgment against appellees ordering that Blue Cross's hearing officer award to appellants reimbursable costs as calculated in appellants' cost reports; the second was a remand to the Secretary with instructions to modify provider-reimbursement appeal procedures in order to cure alleged deprivations of due process. Since any award rendered by Blue Cross's hearing officer would ultimately be paid out of the Medicare trust fund, the first remedy sought by appellants was in essence a money judgment against the United States. The Court of Claims has exclusive jurisdiction of claims against the United States whenever, as in this case, the amount claimed exceeds $10,000, and the claim does not sound in tort. 28 U.S.C. §§ 1491 & 1346 (1976); Atkins v. United States, 556 F.2d 1028, 1036 (Ct.Cl.1977), cert. denied, 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751 (1978). The exclusiveness[4] of the Court of Claims's jurisdiction may not be defeated by couching a prayer for a money judgment in terms of a request for injunctive or declaratory relief. E. g., Hoopa Valley Tribe v. United States, 596 F.2d 435, 436 (Ct.Cl.1979). Thus insofar as appellants seek a money judgment, their cause belongs in the Court of Claims. As noted above, this is not an effect of § 405(h), which is inapplicable to the present case; rather, the district court simply lacks jurisdiction of appellants' claim for money owed by the federal government.
 
 
 26
 Appellants' constitutional claims, however, are cognizable by the district court; here § 1331 provides jurisdiction where no specific statutory avenue to judicial review is open. See St. Louis Univ., supra, 537 F.2d at 291-293. Sensitive to the problems raised by blocking all paths to review of constitutional claims, yet loath to ignore § 405(h), the district judge assumed "arguendo" that her court had jurisdiction to consider appellants' constitutional claims. She concluded in dicta that these claims were without merit. Without passing on the validity of the district court's conclusions, we must note that the practice of assuming jurisdiction arguendo cannot provide a meaningful review of constitutional claims.
 
 
 27
 Appellees argue that appellants have waived their opportunity to challenge the Secretary's delegation of quasi-judicial power to Blue Cross; it is true that appellants chose to be paid through a fiscal intermediary rather than by the Secretary or his subordinates. It is true also that appellants knew that a Blue Cross Appeals Board would initially handle any objections appellants might make to the reimbursements set by Blue Cross; but there is no evidence that appellants were aware that the Secretary would not review the Blue Cross Appeals Board's decision.
 
 
 28
 In 1970 the Medicare Act provided that the determinations made by the fiscal intermediary would be "(subject) to such review by the Secretary as may be provided for by the agreement (between the Secretary and the intermediary) ...." 42 U.S.C. § 1395h(a) (1970). It carries this language too far to say that the Secretary could have entered into an agreement precluding all review of a fiscal intermediary's decisions. St. Louis Univ., supra, 537 F.2d at 293. Our attention has not been directed to any evidence (other than this statutory language) that appellants chose Blue Cross as the final arbiter of appellants' reimbursement disputes. Thus no waiver of the right to challenge the finality of BCA's decision can be inferred.
 
 
 29
 The district court thought it pointless to require the Secretary to review the fiscal intermediary's decision, since most[5] of appellants' objections to Blue Cross's award were grounded on the Constitution, and "claims based directly on the Constitution are generally considered to be beyond the competence of administrative agencies." It is true, of course, that the Secretary's constitutional interpretation would not be authoritative, but that does not mean that the Secretary should be or would be required to affirm an administrative decision which was in his opinion constitutionally infirm. Moreover, the Secretary might have reversed the Blue Cross Board on purely statutory grounds, rendering constitutional questions moot. Cf. Salfi, supra, 422 U.S. at 762, 95 S.Ct. at 2465 (Requiring a final determination of Social Security eligibility by the Secretary is "manifestly reasonable, since is assures the Secretary the opportunity prior to constitutional litigation to ascertain, for example, that the particular claims involved are neither invalid for other reasons nor allowable under other provisions of the Social Security Act.").
 
 III. CONCLUSIONS
 
 30
 This case is remanded to the district court for reconsideration of appellants' challenges to the procedures used in determining appellants' reimbursements for the years 1970, 1971, and 1972. Should appellants choose to pursue relief in the nature of a money judgment against the United States, the district court is of course free under 28 U.S.C. § 1406(c) (1976) to transfer appellants' case to the Court of Claims.
 
 
 31
 No costs are taxed; each party shall bear its own costs on appeal.
 
 
 
 [1]
 At the time of this subsection's enactment, 28 U.S.C. § 41 embraced almost all the jurisdictional grants contained in Title 28. The last sentence of this subsection has been amended to read "under section 1331, or 1346 of Title 28." See 42 U.S.C.A. § 405(h) (Supp.1980)
 
 
 [2]
 See 42 U.S.C. §§ 1395ff (1970), 1395mm (Supp.II 1972). Congress amended the Medicare Act in 1974, creating a Provider Reimbursement Review Board whose decisions are subject to limited judicial review. See 42 U.S.C. § 1395oo (a)-(g) (1976). This amendment was not retroactive and does not apply to the reimbursements challenged in this case. See Pub.L. No. 93-484, § 3(b), 88 Stat. 1459 (1974). We therefore need not consider the validity of the limitations on judicial review contained in 42 U.S.C. § 1395oo (f)-(g)-limitations which raise their own problems. See Homer & Platten, Medicare Provider Reimbursement Disputes: An Analysis of the Administrative Hearing Procedures, 63 Geo.L.J. 107, 143-44 (1974)
 At the time of these amendments, federal courts were often finding provider reimbursements to be judicially reviewable despite the language of § 405(h). See, e. g., Aquavella v. Richardson, 437 F.2d 397 (2d Cir. 1971); Temple Univ. v. Associated Hosp. Serv., 361 F.Supp. 263 (E.D.Pa.1973). We therefore cannot accept the Secretary's argument that Congress's refusal to make its 1972 amendment retroactive shows a Congressional intent to preclude all nonstatutory review prior to the enactment of the amendment; the 1972 amendment does not indicate any disapproval of the then-current practice of nonstatutory review. Humana of So. Carolina, Inc. v. Califano, 590 F.2d 1070, 1077, n.49 (D.C. Cir. 1978).
 
 
 [3]
 The Second Circuit has ruled that § 405(h) does not bar a government attempt to recoup alleged overpayments to providers. See United States v. Aquavella, supra, 615 F.2d at 19
 
 
 [4]
 Subject, of course, to specific statutory exceptions, such as 42 U.S.C. § 405(g) (1976) (district court review of Social Security eligibility determinations)
 
 
 [5]
 But, pace the district court, not all. Appellants challenge Blue Cross's interpretation and application of HEW regulations governing administrative discovery, as well as those governing the allowable reimbursements to providers whose landlords are "related organizations."