**MICHIGAN ACADEMY OF FAMILY PHYSICIANS, a Non-Profit Association, Charles Farber, M. D., Glenn W. House, M. D., Lester Webb, M. D. and Carol A. Diedrich, Plaintiffs,**

v.

**BLUE CROSS AND BLUE SHIELD OF MICHIGAN, and Patricia Harris, Secretary of Health and Human Services, Defendants.**

Civ. A. No. 76–72082.

United States District Court,
E. D. Michigan, S. D.

Dec. 30, 1980.

Frimet, Bellamy, Gilchrist & Jehle, P. C. by Alan G. Gilchrist, James R. Lites, Southfield, Mich., for plaintiffs.

James K. Robinson, U. S. Atty. by Michele Coleman Mayes, Asst. U. S. Atty., Detroit, Mich., for defendant HHS.

Ralph D. Gilpin, Detroit, Mich., for defendant Blue Cross and Blue Shield of Michigan.

## OPINION

GILMORE, District Judge.

This is an action by plaintiffs seeking judicial review of the action of the Secretary of Health and Human Services in setting reimbursement rates at different levels for certain groups of physicians under Title XVIII of the Social Security Act, Part B, 42 U.S.C. §§ 1395 et seq.

Plaintiffs are the Michigan Academy of Family Physicians, a voluntary non–profit association of family physicians, three individual family practitioners, and a Medicaid beneficiary.

Defendants are Blue Cross/Blue Shield of Michigan (BC/BSM) a Michigan non–profit corporation which has been designated as the fiscal intermediary and carrier under the Medicare Act for the State of Michigan and the Secretary of Health and Human Services, the Administrator of the Medicare Program (The Secretary).

At issue is the legality of treating certain family physicians differently from all other physicians in reimbursing them for medical services under Medicare. Such discrimination is illegal for the reasons stated below.

The American Board of Family Practice was established in 1969, and from 1969 until mid–1978 a physician could be qualified to sit for examination by the American Board of Family Practice if he or she had completed a three–year residency program, or if he or she had practiced for a period of six years and completed a minimum of 50 hours continuing education for each of the six years. Effective July 1, 1978, a physician, to be qualified to sit for examination by the American Board of Family Practice, had to have completed a three–year residency program, and, in addition, take the certification examination. To continue to be board certified, one must retake the examination every six years, and to be either board certified or board eligible one must pursue 50 hours of continuing medical education.

Federal health insurance for the aged, popularly known as Medicare, was enacted by the Congress in 1965, and amended in 1970. The system contains two substantially distinct parts, one providing insurance for hospital and related post–hospital services, known as Part A, 42 U.S.C. §§ 1395c–1395i–2 (Supp. V), the other providing insurance for supplementary medical services, primarily physicians' services, known as Part B. This litigation concerns only Part B of the Medicare Act.

Part B of the Medicare Act is a voluntary health insurance program which operates in a manner similar to private health insurance programs. Eligible individuals enroll in the program and agree to pay a monthly premium established by the Secretary. 42 U.S.C. § 1395r(b) and (c). The premiums, together with amounts contributed by the federal government, are deposited in the Federal Supplementary Medical Insurance Trust Fund, which is wholly distinct from the Fund established for Part A. 42 U.S.C. 1395t.

The Medicare Statute provides that Medicare beneficiaries are entitled to reimbursement for medical services provided in the amount of 80 percent of the physician's reasonable charge for covered health services. 48 U.S.C. § 1395*l*(a)(1)(b). 42 U.S.C. § 1395u defines "reasonable charge" as the lower of the charges a physician customarily charges for the same service, and the prevailing charge in the community for that service. The prevailing charge is statutorily defined as an amount which is equal to the seventy–fifth (75th) percentile of the charges for the same service by other physicians in the same locality.

An individual under Part B who obtains a covered service can pay for this service and request reimbursement at the rate of 80

percent of the "reasonable charge," or assign the right to reimbursement to the person providing this service, who can collect as an assignee of the beneficiary, 42 U.S.C. § 1395u(b)(3)(B)(ii). By accepting assignment, a physician agrees to demand no more of a patient that the reasonable charge determined by the Secretary. Accordingly, the patient is only responsible for the 20 percent of the reasonable charge not paid for by Medicare. A physician who does not accept assignment has no statutory limitation on the amount he or she may charge a Medicare beneficiary. However, the physician may not bill Medicare directly, but rather must recover directly from the beneficiary for the services performed.

Upon the inception of the Medicare program, and to this day, BC/BSM has neither developed a procedure to determine what types of professional services are similar to others for purposes of establishing prevailing charges in accordance with 42 U.S.C. § 1595u(b)(3), nor carried out a statistical study to determine different types of providers' actual charge patterns for particular services, pursuant to 42 C.F.R. § 405.504(b). Instead, BC/BSM in 1966 established three "screens" to determine the prevailing fee calculations for Medicare "reasonable charge" determination in Michigan. One screen contained board certified and board eligible internists for hospital visits; another screen contained board certified and board eligible specialists, and board certified and board eligible internists for services other than inpatient hospital visits; and the third screen consisted of board certified and board eligible family physicians, non–board eligible family physicians and various non–physician groups, such as podiatrists, chiropractors, and dentists.

In February of 1973, BC/BSM redefined the three screens. The screens, as they still exist today, were realigned as follows: Screen one is for general practitioners or non–specialists. Included in this screen are DOs and MDs who are general practitioners, non–board certified family practitioners, chiropractors, podiatrists, and dental surgeons. Screen two is made up of internists for inpatient hospital services only.

Contained in this screen are DOs and MDs who are board certified and non–board certified internists for inpatient hospital services only. Screen three is a specialists' screen. It is made up of DOs and MDs who are board certified family practitioners, and board certified and non–board certified specialists. Physicians who engage in a group practice, and who agree to bill under a group number, are placed within the specialists' screen for purposes of determining reasonable charges in Michigan, regardless of the qualification of the physicians in the group.

From these three groupings, a 75th percentile was established, and thus, in determining the prevailing fee for an office visit, the charges of all the physicians within the so-called "specialty screen" would be lumped together to determine the "reasonable charges." Once a physician is classified as either a specialist or a non–specialist by the carrier, all billings submitted for all types of procedures performed by that physician are priced against prevailing charges applicable to the screen in which he or she is placed. The significance of this procedure with respect to the present case is that the 1973 modification of the screens placed board-certified family physicians in the so–called specialists' screen. Family physicians who were not board certified, whether or not they had completed a certified residency program in family practice, and no matter how long they had been practicing as family physicians, remained in the GPN, or non–specialty screen. These family physicians constitute the only physicians not placed within a specialists' screen, and they are the only physicians whose reasonable charges are determined in part by the charges of non physicians, such as podiatrists and chiropractors.

At issue is the validity of prevailing charge screens used by BC/BSM as an upper limit on reimbursable charges for physicians' services under Part B.

Plaintiffs claim that there is no factual basis whatever to justify treating family physicians differently from all other physi-

cians, and not only does the discrimination against them have no rational basis theoretically, it makes less sense in application. Even defendants have admitted at trial that there is no rationale for treating board eligible family physicians as non–specialists. Plaintiffs further contend that the change from a dual screen prevailing fee concept to a one screen prevailing fee concept would result in a lower payment for services, render the Medicare Program more efficient, and would more correctly bring into play market forces.

Plaintiffs contend that the creation and maintenance of special family physician differentials for purposes of determining reasonable charges violates the Fifth Amendment, that the maintenance of the dual reimbursement screen violates plaintiffs' right to procedural due process in that it deprives the plaintiffs of property rights based upon an irrebuttable presumption that plaintiffs' physician services are worth less than, and are not similar to, all other physician services, presumptions not necessarily nor universally true in fact; and that defendants' creation and maintenance of separate reimbursement screens, whereby family physicians are segregated from all other allopathic physicians for determination of Medicare reimbursement violates the express provisions of 42 U.S.C. § 1395u(b)(3) and the applicable regulations, 42 C.F.R. 405.504(b).

Indeed, the evidence bears out plaintiffs' contention. The testimony in the case showed that there was no factual basis whatever to justify treating family physicians differently from all other physicians, either at the onset of the medical care program or presently. And, as is clear from a review of the screening procedure itself, BC/BSM in its private insurance does not distinguish between specialists and non specialists, but rather pays a certain amount for the service regardless of who furnishes that service.

42 U.S.C. § 1395u(b)(3) sets forth the obligation of the Secretary and carrier under Part B of the Medicare program. It provides, in pertinent part:

"In determining the reasonable charge for services for purposes of this paragraph, there shall be taken into consideration the customary charges for *similar services* generally made by the physician or other person furnishing such services, as well as the prevailing charges in the locality for *similar services*. No charge may be determined to be reasonable in the case of bills submitted or requests for payment made under this part after December 31, 1970, if it exceeds the higher of (i), the prevailing charge recognized by the carrier and found acceptable by the Secretary for *similar services* in the same locality in administering this part on December 31, 1970, or (ii) the prevailing charge level that, on the basis of statistical data and methodology acceptable to the Secretary, would cover 75 percent of the customary charges made for *similar services* in the same locality during the last preceding calendar year..." (Emphasis Added)

Further, 42 U.S.C. § 1395 provides that nothing in the Medicare Act shall be construed to authorize the federal government or its agents to supervise or control the practice of medicine or the manner in which medical services are provided, or the selection, tenure, or compensation of officers or employees of health care providers, or the selection of medical care providers by beneficiaries.

The applicable regulation under 42 U.S.C. § 1395 is 42 CFR 405.504(b). This regulation provides:

"The range of prevailing charges in a locality may be different for physicians or other persons who engage in a speciality practice or service than for others. Existing differentials in the level of charges between different kinds of practice or service could, in some localities, lead to development of more than one range of prevailing charges for application by the carrier in its determinations of reasonable charges. Carrier decisions in this respect should be responsive to the existing patterns of charges by physicians and other persons who render covered services, and

should establish differentials in the levels of charges between different kinds of practice or service only where in accord with such patterns."

Plaintiffs contend that defendants have never used the test of similar services as a basis for determining any physician's prevailing charge, and that the current reimbursement system of BC/BSM deviates from the statutory directives. They point out that for purposes of determining any particular physician's "prevailing charge," defendant BC/BSM determines whether the physician is a "specialist" or "general practitioner" under its own definition. Once this decision or definition is rendered, that particular physician will receive reimbursement at the same rate as all other "specialists" or "general practitioners," no matter what type of procedure is being performed. Plaintiffs argue that no recognition of similarity of services exists in defendant's reimbursement decisions, even though a similarity of service is a standard by which such distinctions are to be made.

It is clear that the statute, 42 U.S.C. § 1395u(b)(3) uses as the statutory scheme the customary charge of physicians for similar services in a specific locality. The statute further provides that nothing in the Medicare Act shall be construed as authorizing the federal government or its agent to supervise or control the practice of medicine or the manner in which medical services are provided, or the selection of Medicare providers by beneficiaries.

20 C.F.R. 405.504(b) authorizes a carrier to separate customary charges for similar services in computing the 75th percentile prevailing fee reasonable charge ceiling. In so doing, the regulation conflicts with the statute, which mandates that customary charges of physicians for similar services be the test for reimbursement.

■ The maintenance of three screens in the State of Michigan clearly violates 42 U.S.C. § 1395 because it tends to influence the patient's choice of a physician, and reduces Medicare recipients' reimbursement solely by virtue of their choice of the type of physician to perform a particular medical service. The effect of the maintenance of these screens is to cause a Medicare recipient to go to a specialist for a particular service, or, if the recipient is not sophisticated enough to know the provisions, to cause him or her to suffer a lesser reimbursement than a person who had chosen a specialist to perform the type of medical service required. Even 20 C.F.R. 405.504(b) requires that any distinction between types of physicians for purposes of establishing prevailing fee schedules must be based upon a statistically valid analysis of the range of charges. The record in this case failed to show any statistically valid analysis of the billings of allopathic family physicians as compared with other types of family physicians.

■ There is no basis to justify the segregation of allopathic family physicians from all other types of physicians. Such segregation is not rationally related to any legitimate purpose of the Medicare statute. To lump MDs who are family physicians, but who have chosen not to become board certified family physicians for whatever motive, with chiropractors, dentists, and podiatrists for the purpose of determining Medicare reimbursement defies all reason.

The effect of this can be dramatically shown in the case of Plaintiff Carole A. Diedrich, a Medicare recipient who has been disabled and has been a recipient since 1975. Her physician is Philip Lange, M.D., a family physician who has practiced in Lansing, Michigan, for approximately 23 years. Dr. Lange sees patients ranging in age from newborns through the very old, and treats a vast majority of medical conditions. He is on the staffs of St. Lawrence Hospital, Sparrow Hospital, and the Ingham County Medical Center. He is a graduate of the Wayne State University Medical School, and did a one–year internship and one–year residency in general medicine at St. Lawrence Hospital. He is an instructor at Michigan State University, and teaches students in family medicine. He is neither board eligible nor board certified by the American Board of Family Practice. For most procedures, Dr. Lange does not accept

assignment from the Medicare program. He does not accept assignment from Medicare for certain office calls, and charges patients $50 for a comprehensive examination, and $18 for a routine office visit.

Where a physician does not accept an assignment, the patient is responsible for whatever charge the physician renders, the patient receiving reimbursement from Medicare in the amount of 80 percent of the reasonable fee, as determined by the carrier. The prevailing fee limitation for 1980 in the Lansing area is as follows: initial comprehensive visit, non–specialist $25, specialist $50; follow–up office visit, non–specialist $10.70, specialist $12.30. Solely as a result of Mrs. Diedrich's choice of Philip Lange as her treating physician, she, while paying the same premium as other Medicare recipients, received less coverage for services performed than had she chosen a physician defined as a "specialist."

This example dramatically shows the effect of the screens established by BC/BSM in the reimbursement of Medicare recipients, and is the heart of plaintiffs' complaint in this action. Simply stated, Mrs. Diedrich, while paying the same premium as other Medicare recipients, receives less coverage for services performed for primary care because she goes to Dr. Lange than she would have received had she chosen a physician defined as a specialist.

The establishment of separate screens segregating non–board certified family physicians from all other physicians clearly is violative of the Medicare Act. To the extent that 20 C.F.R. 405.504(b) authorizes the screens set up by the defendants, that regulation is invalid.

Because the Court has found that the actions of defendants violate the Medicare statute, 42 U.S.C. § 1395 et seq., it need not consider the constitutional arguments raised by plaintiffs.

A mandatory injunction will issue, directing defendants to provide that all physicians be included in a single screen, separate from the screen for chiropractors, podiatrists, and dentists.

Plaintiffs may tax costs. A judgment may be entered in accordance with this opinion, which shall constitute the findings of fact and conclusions of law required by FRCP 52.