728 F.2d 326
 4 Soc.Sec.Rep.Ser. 179, Medicare&Medicaid Gu 33,632
MICHIGAN ACADEMY OF FAMILY PHYSICIANS, et al., Plaintiffs-Appellees,
v.
BLUE CROSS AND BLUE SHIELD OF MICHIGAN and Richard S.
Schweiker, Secretary of Health and Human Services,
Defendants-Appellants.
 No. 81-1202.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 29, 1983.
Decided Feb. 23, 1984.
 
 Leonard R. Gilman, U.S. Atty., Michele Coleman Mayes, Asst. U.S. Atty., Detroit, Mich., Thomas Stuber, Atty., argued, Dept. of Health & Human Services, Baltimore, Md., for defendants-appellants.
 Alan Gilchrist, argued, Frimet, Bellamy & Gilchrist, Detroit, Mich., for plaintiffs-appellees.
 Before JONES, Circuit Judge, and PECK and BROWN, Senior Circuit Judges.
 JOHN W. PECK, Senior Circuit Judge.
 
 
 1
 The principal question raised in this appeal is the validity of the method adopted by the Department of Health and Human Services (HHS) by which certain eligible individuals receive reimbursement for services performed by physicians and other individuals pursuant to the federal Health Insurance for the Aged and Disabled Act (Medicare), 42 U.S.C. Sec. 1395 et seq. The Michigan Academy of Family Physicians (Michigan Academy) filed suit against Blue Cross and Blue Shield of Michigan (BC/BSM) and Richard S. Schweiker, Secretary of HHS (Secretary). The complaint alleges that the classification of certain family physicians separately from other physicians with similar qualifications, and together with non-allopathic doctors (such as chiropractors and podiatrists), contraverted the statutory mandate of Congress as expressed in the Medicare Act. A violation of due process and equal protection rights under the fifth amendment of the United States Constitution is also claimed. The district court, after finding jurisdiction, held that the classification violated the Medicare Act, Secs. 1395u(b)(3) & 1395a, and ordered the Secretary to include all family physicians with other medical doctors. 502 F.Supp. 751 (E.D.Mich.1980). BC/BSM and the Secretary appeal.
 
 BACKGROUND
 
 2
 The Medicare Act consists of two programs. Part A provides insurance for hospitalization and post-hospital services. 42 U.S.C. Sec. 1395c-1395i-2. Part B, at issue in this case, provides insurance for supplemental medical care. 42 U.S.C. Sec. 1395j-1395w. Under part B eligible individuals may voluntarily enroll in the health insurance program by paying a monthly premium. Members enrolled in the program may request reimbursement of eighty per cent of the reasonable charges, as defined by the insurance carrier, of the services rendered, or assign the right of reimbursement to their physician. 42 U.S.C. Sec. 1395u(b)(3)(B)(ii).
 
 
 3
 As directed by statute, the Secretary is required to contract with an insurance intermediary to administer the Medicare part B program. 42 U.S.C. Sec. 1395u. According to the statute, the carrier is responsible for determining reasonable fees for covered services in order to calculate the applicable reimbursement amount. Id. The Act further provides that a carrier, in calculating these reimbursements, is to consider "the customary charges for similar services generally made by the physician or other person furnishing such services, as well as the prevailing charges in the locality for similar services." 42 U.S.C. Sec. 1395u(b)(3). Price ceilings are placed on the calculation of the reasonable fee so that such fee is not reasonable if it exceeds either the prevailing or customary fees as calculated under the Medicare Act.[1]
 
 
 4
 In August, 1967, the Secretary validly promulgated 42 C.F.R. Sec. 405.504. 32 Fed.Reg. 12600 (1967). After first restating the definition of prevailing charges, the regulation in part B permits carriers to establish separate prevailing charges for "specialists" and "non-specialists" and specifically provides that carriers can develop more than one set of prevailing charges based on fee patterns in a local area. As a practical result of this regulation, carriers developed separate and distinct prevailing charges for different types of physicians. Under the regulation, patients receiving one type of service from a specialist are entitled to incur a higher reasonable charge, and therefore to receive a larger reimbursement than if they received the identical service from a non-specialist.
 
 FACTS
 
 5
 Beginning in 1966 the Secretary contracted with BC/BSM to administer the Medicare part B program in the state of Michigan. BC/BSM, in initially determining charges, lumped physicians into three groups for the purpose of calculating prevailing charges in each geographic locality in Michigan. One group consisted exclusively of hospital internists and other hospital specialists. A second group consisted of certified specialists. The final group consisted of general practitioners and other non-specialists. Thereafter, with the passage of 42 U.S.C. Sec. 1395x(r), including other non-allopathic doctors such as chiropractors, dentists, and podiatrists in the Medicare Program, BC/BSM restructured its prevailing charge screens, devising the present system. Group 1 consisted of hospital personnel and other internists. Group 2 consisted of specialists and board certified specialists or board eligible specialists. Group 3 included general practitioners, board eligible family physicians, and other non-physicians added in the 1972 amendment to the Medicare statute.
 
 
 6
 Under the Medicare system existing in Michigan, and in several other states, a physician determines what services he will perform for a patient. If covered by the Medicare Act, he assigns the service a procedural code or number from those denoted by the Secretary. BC/BSM, after determining what type of physician performed the service, will thereupon reimburse the patient, or his assignee, based in part on the prevailing charge screen within which the physician is classified. In practice, enrollees receiving services from a specialist would receive a larger reimbursement amount than if they received similar services from a general practitioner performing the same service.
 
 
 7
 The Michigan Academy, a nonprofit Michigan corporation representing family physicians throughout the state, filed suit against BC/BSM and the Secretary, arguing that the Michigan reimbursement procedure violated the Medicare statute and was unconstitutional. It alleged that the use of prevailing charge screens ignored the Medicare Act's mandate to reimburse equal amounts for similar services performed. Further, Michigan Academy alleged, the use of prevailing charge screens had an impermissible impact on an enrollee's choice of a physician and unduly infringed the free practice of medicine. Alternatively, Michigan Academy argued that the procedure denied its members equal protection and due process under the fifth amendment of the United States Constitution since 42 C.F.R. Sec. 405.504 irrationally classified them together with non-allopathic doctors rather than with other specialists with whom they shared similar qualifications and talents.
 
 
 8
 At trial no witness for Michigan Academy or BC/BSM could explain why family physicians were separately categorized from all other medical specialists. BC/BSM, in addition, indicated that its classifications were not based on any particular statistical data but that they had apparently evolved over the years.
 
 
 9
 At the close of all the evidence, the district judge held that Sec. 405.504 violated the Medicare Act. He found that the Medicare Act mandated equal reimbursements for similar services performed despite the type of physician performing them, and that the prevailing charge screens improperly infringed on a patient's free choice in selecting a physician. At the same time, while indicating on several occasions that he felt the regulation was irrational and without support in the trial record, the district judge specifically refused to rule that the regulation is unconstitutional. Holding only that the regulation violated the Medicare Act, the district judge ordered the Secretary to reclassify all physicians together, including family physicians, in one single prevailing charge screen.
 
 
 10
 On appeal, BC/BSM and the Secretary argue initially that the district court lacked jurisdiction to render its decision. In the alternative, they contend that Sec. 405.504 is a permissible interpretation by HHS of the language of the Medicare Act and that the classification of certain family physicians is constitutional. Even if this court disapproves Sec. 405.504 and finds it unconstitutional, BC/BSM and the Secretary argue, the district judge's remedy of restructuring the prevailing price screens was improper. This court, they contend, should remand the case to the Secretary to allow for a proper restructuring of the reimbursement procedure.
 
 JURISDICTION
 
 11
 We initially turn to the thorny question of whether the district court had jurisdiction to render a decision in this case. In its brief BC/BSM contends that Sec. 205(h) of the Social Security Act, 42 U.S.C. Sec. 405(h), as interpreted by the courts, precludes jurisdiction in this case. BC/BSM first characterizes this cause as a dispute over the amount of reimbursements owed a recipient under the Medicare part B program, an area in which Congress specifically foreclosed judicial review. Since Sec. 1395ff provides a complex administrative methodology for resolving such appeals, BC/BSM urges, no judicial review of such matters is available. In the alternative, they contend that even though Sec. 1395ff is silent on the question of judicial review of decisions by the Secretary made in the course of implementing the Medicare part B program federal question jurisdiction under 28 U.S.C. Sec. 1331 is specifically precluded by Sec. 405(h).
 
 
 12
 It is well-settled that there is no judicial review of disputes simply concerning the amount of reimbursement or an individual's eligibility to receive Medicare part B benefits. The Supreme Court in United States v. Erika, Inc., 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), interpreting 42 U.S.C. Sec. 1395ff,[2] held that Congress clearly and convincingly intended that no judicial review of such questions was permissible. The Court found that the legislative history of Sec. 1395ff, as well as the presence of an elaborate administrative review mechanism, clearly showed Congress's intent to bar such disputes from judicial consideration. Id. at 208-09, 102 S.Ct. at 1654. Among the numerous concerns Congress had mentioned and the Court found important was the need to stem the potential avalanche of litigation concerning the amount of reimbursement. Id. In finding that no federal question jurisdiction existed for adjudicating questions involving the amount of reimbursements under Medicare part B, the Supreme Court left open the question of whether all claims involving disputes over the administration of part B reimbursements were similarly foreclosed.
 
 
 13
 In the wake of Erika, however, courts have strenuously endeavored to find jurisdiction over various types of challenges to the procedural aspects of the Medicare part B program despite the language of Sec. 1395ff. The Supreme Court itself permitted a constitutional challenge to the hearing process which Congress permitted under Sec. 1395ff. Schweiker v. McClure, 456 U.S. 188, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982). Other federal courts have followed suit. Colonial Penn Insurance Co. v. Heckler, 721 F.2d 431 (3d Cir.1983); Starnes v. Schweiker, 715 F.2d 134 (4th Cir.1983); Ringer v. Schweiker, 697 F.2d 1291 (9th Cir.1982), cert. granted sub nom. Heckler v. Ringer, --- U.S. ----, 103 S.Ct. 3535, 77 L.Ed.2d 1386 (1983).
 
 
 14
 In this case BC/BSM contends this suit involves simply a dispute over the amount of reimbursement due. In a word, BC/BSM contends, Michigan Academy simply is seeking to have family physicians and their patients moved to the more lucrative specialist screen, boiling down to an argument for an increase in amounts reimbursed. Erika, it concludes, should bar this suit outright. This argument, however, is without merit.
 
 
 15
 While the eventual result of this suit may cause an increase in amounts of reimbursement, that does not necessarily follow. In some cases the result might be an increased amount of reimbursement, and in others, a reduction in reimbursement could occur. Michigan Academy, at bottom line, is challenging the overall mechanism for determining the amounts of reimbursements, not the actual value of any particular reimbursement.
 
 
 16
 More importantly, unlike the situation in Erika, supra, there is no indication that Congress intended to preclude our jurisdiction over suits challenging procedural aspects of the Medicare program, despite the language of Sec. 1395ff or Sec. 405(h). Section 1395ff, by its terms as interpreted by the Supreme Court, precludes judicial review of decisions by the carrier concerning amounts of reimbursements, but is silent on the question of reviewing decisions of the Secretary made in implementing the overall Medicare part B program. Erika, supra; Starnes, supra. At the same time, Congress provided for an elaborate administrative review of the carrier's decisions. See 42 U.S.C. Sec. 1395ff(a). No similar procedure was developed for review of disputes such as that raised in this case. This court has pointed out that where no mechanism for reviewing administrative decisions is available, courts should be slow to find Congress intended such a bar absent a clear and convincing showing either in the particular act's language or legislative history. Chelsea Community Hospital, SNF v. Michigan Blue Cross Ass'n, 630 F.2d 1131, 1134 (6th Cir.1980) (citing Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) and Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)) (jurisdiction exists for reviewing pre-1973 claims disputing the amount of reimbursement under part A of the Medicare Act where no other mechanism for review of such determinations available). With this in mind, we hesitate to bar judicial review over this suit simply because Congress failed to specifically allow for our review in Sec. 1395ff.
 
 
 17
 BC/BSM and the Secretary argue, however, that even if the language of Sec. 1395ff does not specifically foreclose our review in this case, 42 U.S.C. Sec. 405(h), as incorporated into the Medicare Act by 42 U.S.C. Sec. 1395ii, provides clear support for the contention that Congress intended to preclude all judicial review. They contend that the Supreme Court specifically held that no jurisdiction existed for claims arising under the Social Security Act based on the clear and unambiguous language of this section. Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (where no other jurisdiction was provided under the Social Security Act, no judicial review could lie). Since this precise provision was incorporated into the Medicare statute, they argue, and Sec. 1395ff does not specifically provide for judicial review of part B claims, it should be similarly construed in this case. We disagree.
 
 
 18
 In Salfi, supra, the Supreme Court specifically referred to the alternative methods available for judicial review of Social Security disputes. Id. at 757, 95 S.Ct. at 2462-63 (jurisdiction available under Sec. 405(g)). Later Supreme Court decisions have readily followed Salfi in barring federal question jurisdiction, but at the same time permitted suits under Sec. 405(g). Califano v. Yamasaki, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176, remanded sub nom. Yamasaki v. Harris, 607 F.2d 329 (9th Cir.1979); Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
 
 
 19
 In Herzog v. Secretary of HEW, 686 F.2d 1154 (6th Cir.1982), this court, while barring judicial review of statutory challenges to amounts of reimbursement under part B of the Medicare Act, specifically referred to the elaborate administrative mechanism of Sec. 1395ff as an alternative avenue of review. The court in Herzog pointed out that Congress intended to direct such disputes through administrative process rather than overload the federal courts with a flood of small claims. Id. at 1158. See also Erika, supra; Starnes, supra.
 
 
 20
 Unlike Herzog, however, this dispute involves not a challenge to an individual amount of reimbursement, but instead a challenge to a regulation by the Secretary establishing the procedure under which reimbursement schedules should be determined. Further, Congress did not provide any mechanism to review such decisions of the Secretary in this type of case. In the absence of federal question jurisdiction, therefore, the Secretary apparently would have unbridled discretion to promulgate any regulation he chose. Courts confronted with this dilemma have held that Congress did not intend to preclude federal jurisdiction over such causes. Colonial Penn Insurance Co., supra; Starnes, supra; Ringer, supra. Cf. Chelsea Community Hospital, supra (court will entertain suit where no means of reviewing pre-1973 reimbursements under part A of Medicare Act and nothing to indicate Congress intended to foreclose such jurisdiction). Given the presumption favoring judicial review and absent a clear and convincing showing that Congress intended the contrary,[3] we conclude that the district court correctly found federal question jurisdiction under 28 U.S.C. Sec. 1331 to render a decision in this case.
 
 STATUTORY CHALLENGE
 
 21
 Having determined that the district court properly exercised jurisdiction, we turn to the question of whether the Secretary's method of determining reasonable charges for calculating the amount of reimbursements under part B of the Medicare Act in the state of Michigan conformed with the statutory directives of 42 U.S.C. Sec. 1395u(b)(3). After careful analysis of the Medicare Act, its legislative history, and the procedure selected by the Secretary, we find the present methodology impermissible.
 
 
 22
 Devising procedures for calculating reasonable charges for purposes of reimbursements Sec. 1395u(b)(3) of the Medicare Act specifically requires the Secretary to focus on the customary and prevailing charges for similar services in a locality. The obvious common denominator throughout Sec. 1395u(b)(3) is "similar services." Though not defined by the statute, the language plainly stands for the proposition that once a particular service is determined, all services of a similar nature are to be compensated or reimbursed at the customary, or prevailing rate. The touchstone of this language is that similar services, once determined, are to be compensated equally, regardless of who performs them, at a particular level, determined by the carrier. See 42 U.S.C. Sec. 1395u(b)(3); Alexander v. Schweicker [sic], 516 F.Supp. 182 (D.Conn.1981).
 
 
 23
 Despite this plain statutory language, and without explanation, the Secretary promulgated 42 C.F.R. Sec. 405.504 providing that carriers, in calculating prevailing charges for a particular locality, could develop separate prevailing charges for physicians who were specialists. Such prevailing charges, as defined in Sec. 405.504(2) were to be based on statistics, reflecting customary charging patterns in the locality. In implementing this program in Michigan, the Secretary approved BC/BSM's plan of lumping physicians and non-physicians into three categories, separating specialists from non-specialists except in the case of family physicians. Under this approach, once a physician or other medical provider selected a particular service to perform he chose the appropriate procedure code for the service. Reimbursement for that service was then determined on the basis of the charge screen to which the particular physician or non-allopathic doctor was assigned. Under this approach, a general practitioner would receive a smaller sum than would a specialist for a routine office visit, despite their selections of identical procedural codes.
 
 
 24
 BC/BSM and the Secretary in an effort to reconcile the obvious inconsistency between the language of Sec. 1395u(b)(3) and the regulation, argue that Sec. 405.504 attempts to further the legislative intent to have reimbursements under the Medicare Act reflect actual charging patterns in the community. They refer to several instances where Congress stated its concern about the possibility of artificially distorting fees charged by physicians through undue interference with physician's fees. At trial, however, when questioned about the statistical basis of the Michigan prevailing charge screens, particularly in the separation of family physicians from all other medical specialists (even though they have similar qualifications and perform similar services), no witness could produce actual data demonstrating the significance of such a division. Dr. Boyles, testifying at the trial, stated that the statistical evidence supporting the entire plan was at best "skimpy".[4] Nor could witnesses point to any actual evidence demonstrating that family physicians and non-physicians, such as chiropractors or podiatrists, charged similar amounts for similar services. In fact, the record indicates that the revisions of the prevailing charge screens in 1973 were primarily based on the evolution of the original set of screens which had been basically selected without the benefit of actual data.
 
 
 25
 We recognize the fact that regulations promulgated by the Secretary must be granted deferential consideration and that we should exercise caution in overturning them. NLRB v. Bell Aerospace Co. Division of Textron, Inc., 416 U.S. 267, 274-75, 94 S.Ct. 1757, 1761-62, 40 L.Ed.2d 134 (1974). In this case, in addition to there being no justification for its promulgation, and the obvious inconsistency with the plain language of the Medicare statute, we also hold that this regulation is irrational and is invalid.[5]
 
 
 26
 Our decision to invalidate the regulation is bolstered by the district court's findings concerning the pernicious impact of this system on the cost of medical care. Several witnesses, including former Secretary of HEW Joseph A. Califano, pointed to the severe inflationary impact the system produced. In addition, due to more lucrative reimbursements of specialists, doctors had an added incentive to become specialized and over-utilize technology leading to increased medical costs. At the same time the system, by encouraging specialization, forced patients to seek specialists even for routine health care. Primary care, at the same time, tended to fall off as more and more doctors entered specialty fields. In passing the Health Professions Educational Assistance Act of 1976, Congress clearly expressed its concern for the continued need to protect and encourage primary medical care. See Pub.L. No. 90-484, 90 Stat. 2243 (reference to congressional intent to improve maldistribution of physicians and improve availability of primary health care). As was plainly demonstrated at trial, the maldistribution of physicians was significantly enhanced through the use of prevailing charge screens. As a corollary to our holding, therefore, we conclude that these findings by the district court are sufficient to support its determinations that the regulation as applied violates 42 U.S.C. Sec. 1395a, prohibiting infringement of a patient's free choice of a physician.
 
 
 27
 While we hold today that 42 C.F.R. Sec. 405.504 is invalid, due to its failure to recognize the statutory mandate that similar services be considered identically regardless of who performs them, we think the district court's remedy, adopting sua sponte a single prevailing charge screen for all physicians, goes too far. In a case as complex as this one, we seek the expertise of the government agency to which Congress has assigned responsibility for implementing the statute. Our function on review must be one that is clearly limited to providing correct guidelines within which the knowledge and experience of the specialized agency is called into play. In so doing the policies and goals of the statute may more closely be pursued and implemented. Industrial Union Dept. v. American Petroleum Institute, 448 U.S. 607, 100 S.Ct. 2844, 65 L.Ed.2d 1010 (1980); St. Louis University v. Blue Cross Hospital Service, 537 F.2d 283 (8th Cir.), cert. denied, 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976).
 
 
 28
 We therefore remand this case to the Secretary for reconsideration of the Michigan reimbursement plan under part B of the Medicare program with instructions to consider similar services in an equal manner regardless of who performs that service.
 
 
 29
 Remanded.
 
 
 
 [1]
 42 U.S.C. Sec. 1395u(b)(3) provided a complex methodology for calculating the specific amounts of each category. The section provides in pertinent part:
 In determining the reasonable charge for services for purposes of this paragraph, there shall be taken into consideration the customary charges for similar services generally made by the physician or other person furnishing such services, as well as the prevailing charges in the locality for similar services. No charge may be determined to be reasonable in the case of bills submitted or requests for payment made under this part after December 31, 1970, if it exceeds the higher of (i) the prevailing charge recognized by the carrier and found acceptable by the Secretary for similar services in the same locality in administering this part on December 31, 1970, or (ii) the prevailing charge level that, on the basis of statistical data and methodology acceptable to the Secretary, would cover 75 percent of the customary charges made for similar services in the same locality during the last preceding calendar year elapsing prior to the start of the fiscal year in which the bill is submitted or the request for payment is made....
 
 
 [2]
 Section 1395ff provides in pertinent part:
 (a) The determination of whether an individual is entitled to benefits under part A or part B, and the determination of the amount of benefits under part A, shall be made by the Secretary in accordance with regulations prescribed by him.
 (b)(1) Any individual dissatisfied with any determination under subsection (a) as to--
 (A) whether he meets the conditions of section 226 of this Act or section 103 of the Social Security Amendments of 1965, or
 (B) whether he is eligible to enroll and has enrolled pursuant to the provisions of part B of this title, or section 1818, or section 1819, or
 (C) the amount of benefits under part A (including a determination where such amount is determined to be zero)
 shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 205(b) and to judicial review of the Secretary's final decision after such hearing as is provided in section 205(g).
 (2) Notwithstanding the provisions of subparagraph (C) of paragraph (1) of this subsection, a hearing shall not be available to an individual by reason of such subparagraph (C) if the amount in controversy is less than $100; nor shall judicial review be available to an individual by reason of such subparagraph (C) if the amount in controversy is less than $1,000....
 
 
 [3]
 Chelsea Community Hospital, SNF v. Michigan Blue Cross Ass'n, supra (citing Ass'n of Data Processing Service Organizations v. Camp, supra; Abbott Laboratories v. Gardner, supra )
 
 
 [4]
 Paul Riesel, Chief of the Physician Practitioner Reimbursement Branch in the Bureau of Program Policy of the Health Care Financing Administration in Baltimore, Maryland, stated that no instructions were given to the carriers for determining prevailing charges and there was no apparent reason for separating family physicians from other specialists with similar qualifications
 
 
 [5]
 Having found this regulation statutorily unsound, we need not address the constitutional issues also raised in this case