NATIONAL ASSOCIATION OF HOME
HEALTH AGENCIES, et al.,
Appellees,

v.

Richard S. SCHWEIKER, et
al., Appellants.

No. 82–1293.

United States Court of Appeals,
District of Columbia Circuit.

Argued 27 May 1982.

Decided 14 Sept. 1982.

Certiorari Denied Feb. 22, 1983.
See 103 S.Ct. 1193.

Margaret E. Clark, Atty., Dept. of Justice, Washington, D. C., with whom Stanley S. Harris, U. S. Atty. and Anthony J. Steinmeyer, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellants.

James C. Pyles, Washington, D. C., for appellees.

Before WILKEY, Circuit Judge, and ROBB and FAIRCHILD,* Senior Circuit Judges.

Opinion for the Court filed by Circuit Judge WILKEY.

WILKEY, Circuit Judge:

Appellants, the Secretary of Health and Human Services and the Administrator of the Health Care Financing Administration (hereinafter referred to collectively as the Secretary), appeal from a district court decision invalidating a regulation requiring Home Health Agencies to seek Medicare reimbursement determinations and payments from government-designated regional intermediaries. The Secretary maintains that the district court did not have jurisdiction to decide the issues involved. He also challenges the lower court's holdings that the Secretary lacked the statutory authority to promulgate the regulation and that he failed to comply with the notice and comment requirements of the Administrative Procedure Act (APA).[1]

We hold that the district court properly exercised its jurisdiction and that it correctly concluded that the Secretary was required to comply with the APA's notice and comment provisions. However, we reverse its holding that the Secretary lacked the authority to promulgate the regulation in question.

## I. BACKGROUND

### A. Statutory Scheme

The Medicare Act,[2] enacted in 1965, created two distinct, but interrelated, types of health insurance coverage for the aged and disabled. Part B of the Act covers the cost of physician and non-hospital services.[3] Part A provides coverage for inpatient hospital services, post-hospital extended care services and home health services.[4] Home health agencies (HHAs) provide Part A services to a patient in his home, as a lower cost alternative to institutional care.[5] The present litigation involves the mechanism for making reimbursement determinations and payments to HHAs under Part A of the Act.

Under the Act qualified providers of Part A health services are entitled to be reimbursed for the reasonable cost of providing services to Medicare beneficiaries.[6] At the inception of the Medicare program in 1965, HHAs, like other qualified providers, had the option of nominating an intermediary to determine the proper amount of reimbursement and make those payments.[7] When an HHA chose to use an intermediary, the Secretary would enter into a cost-reimbursement contract with the nominated intermediary.[8] Alternatively, if the HHA chose not to use an intermediary, it submitted its claims directly to the Secretary.[9] Under the Act, the Secretary was empowered to perform any of these functions di-

---

* Senior Judge, U. S. Court of Appeals for the Seventh Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d) (Supp. IV 1980).

1. 5 U.S.C. § 553 (1976).

2. 42 U.S.C. §§ 1395–1395tt (1976 & Supp. IV 1980).

3. Id. §§ 1395j–1395w (1976 & Supp. IV 1980).

4. Id. §§ 1395c–1395i (1976 & Supp. IV 1980).

5. Id. § 1395x(m) (1976 & Supp. IV 1980).

6. Id. §§ 1395f(a) & (b), 1395x(m), (o) & (u) (1976 & Supp. IV 1980).

7. Id. § 1395h(a) (Supp. IV 1980).

8. Id.

9. Id. § 1395g (1976 & Supp. IV 1980).

rectly or by contract.[10] Payment of claims submitted directly to the Secretary was made by the Office of Direct Reimbursement (ODR) of the Health Care Financing Administration (HCFA).

In 1977 section 1395h, the provision giving providers the right to nominate intermediaries, was amended by the addition of provisions authorizing the Secretary to assign or reassign providers to certain intermediaries if he determined, after applying specified criteria, that the assignment or reassignment would result in the more effective and efficient administration of the Medicare program.[11] In 1980 Congress, responding to concerns over the "wide variation in administrative and reimbursement practices among intermediaries with respect to home health providers,"[12] further amended section 1395h. The 1980 amendment required the Secretary to designate regional intermediaries for freestanding[13] HHAs electing to use an intermediary.[14] Shortly after the 1980 amendment, the Secretary promulgated the regulation that is the cause of the present controversy.

### B. The Contested Regulation

On 8 December 1981 the Secretary, without following the notice and comment requirements of the APA, issued an administrative instruction directing freestanding HHAs to begin using forty-nine government-designated, state-wide intermediaries for all Medicare reimbursement determinations and payments.[15] Under the proposed plan, 864 HHAs were reassigned to new intermediaries.[16] Approximately fifty-four percent of these 864 were providers who had previously been dealing directly with the Secretary. At the time the instruction issued the Secretary planned to phase in the proposed reassignments over a period beginning 1 January 1982 and ending 1 October 1982, with transfers becoming effective at the start of the individual HHA's fiscal year. Subsequently, however, the Secretary accelerated the proposed implementation, by requiring that all transfers be effective by 15 March 1982. Soon after the December 1981 instruction issued, the present litigation ensued.

### C. The Present Litigation

On 24 December 1981 Appellees, two national associations of HHAs, a corporation which owns and operates forty-eight HHAs, and thirty-seven individual HHAs, filed this action in the district court. Appellees sought to enjoin the Secretary from implementing the reassignment outlined in the December 1981 instruction on the grounds that the instruction violated the Medicare Act, the APA, and the Due Process Clause of the Fifth Amendment. On cross-motions for summary judgment, the district court ruled in Appellees' favor on most of the issues involved.

The court rejected the Secretary's argument that jurisdiction over all but the Appellees' APA claim was precluded by 42 U.S.C. § 405(h), concluding that section 405(h) did not preclude federal question jurisdiction over statutory claims for which no alternative form of judicial review was available.

---

10. *Id.* § 1395kk(a) (1976).

11. Medicare-Medicaid Anti-Fraud and Abuse Amendments, Pub.L.No.95–142, 91 Stat. 1175, 1198–99 (1977) (codified at 42 U.S.C. §§ 1395h(e)(1), (2), (3) & 1395h(f) (Supp. IV 1980)).

12. H.R.Rep.No.1167, 96th Cong., 2d Sess. 368, *reprinted in* 1980 U.S.Code Cong. & Ad.News 5526, 5731–32.

13. HHAs may either be affiliated with another provider (such as a hospital or rehabilitation center), in which case they are referred to as "provider-based", or they may be "freestanding", in which case they operate without such an affiliation.

14. Omnibus Budget Reconciliation Act of 1980, Pub.L.No.96–499, § 930(*o*), 94 Stat. 2599, 2632 (1980) (codified at 42 U.S.C. § 1395h(e)(4) (Supp. IV 1980)).

15. The instruction was included in a letter sent directly to all intermediaries, with directions to furnish copies to the HHAs they served.

16. The other approximately 2,000 HHAs were to deal with their current intermediaries, since those intermediaries had been designated as regional intermediaries.

The court also held in Appellees' favor on the merits, concluding that under the Medicare Act, HHAs which had not previously nominated intermediaries had the right to have Medicare reimbursement determinations and payments made directly by the Secretary. The court further held that the December 1981 instruction did not apply to those HHAs which had elected to deal with an intermediary because it was a rule subject to the notice and comment requirements of the APA, requirements the Secretary failed to follow. Accordingly, the court enjoined the Secretary from requiring freestanding HHAs to deal with regional intermediaries if they had chosen not to, and ordered that any effort to reassign freestanding HHAs that had elected to use intermediaries be preceded by the agency's compliance with the notice and comment provisions of the APA.[17] This appeal followed.

## II. JURISDICTION

Appellees maintain that the district court had jurisdiction to hear all their claims under 28 U.S.C. § 1331, the general grant of federal question jurisdiction. The Secretary counters by arguing that 42 U.S.C. § 405(h), incorporated by reference into the Medicare Act,[18] precludes the district court from exercising section 1331 jurisdiction. Alternatively, the Secretary for the first time argues that if jurisdiction is not precluded by section 405(h), it has been impliedly precluded by Congress' failure expressly to provide for judicial review of claims like the present ones. Because we agree with the district court's interpretation of section 405(h), we hold that jurisdiction over the present action is not barred by this much-litigated preclusion section.[19] We also hold that Congress did not impliedly preclude jurisdiction over claims like the present ones by failing expressly to provide for their review.

### A. Jurisdiction Over the Procedural Claims

■ Although the Secretary did not object to the exercise of jurisdiction over Appellees' APA claim at the district court level, he has apparently changed his position on appeal, contending that the district court was mistaken in concluding that it had jurisdiction over "*any* of [Appellees'] claims."[20] However, we can easily dispose of the jurisdictional issue with respect to the APA claim by relying on a prior decision of this court.

Section 405(h) of the Social Security Act provides:

The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who are parties to such hearing. No findings of fact or decision

---

17. The district court dismissed Appellees' Due Process claim because it was an attack on the Secretary's future determination of "reasonable costs" and not on the administrative instruction being challenged and because it was based on the "speculative" possibility that Appellees would not be totally compensated for the costs attributable to the transition. *National Association of Home Health Agencies v. Schweiker*, No. 81–3160, *slip op.* at 8 (D.D.C. 10 March 1982). The parties have not appealed that ruling.

18. 42 U.S.C. § 1395ii (1976).

19. This court has decided two cases involving section 405(h). *Humana of South Carolina, Inc. v. Califano*, 590 F.2d 1070 (D.C.Cir.1978); *Association of American Medical Colleges v. Califano*, 569 F.2d 101 (D.C.Cir.1977). The section has also spawned numerous litigation in other circuits. *United States v. Sanet*, 666 F.2d 1370 (11th Cir. 1982); *Hopewell Nursing Home*

*v. Schweiker*, 666 F.2d 34 (4th Cir. 1981); *Daniel Freeman Memorial Hospital v. Schweiker*, 656 F.2d 473 (9th Cir. 1981); *Chelsea Community Hospital, SNF v. Michigan Blue Cross*, 630 F.2d 1131 (6th Cir. 1980); *Kechijian v. Califano*, 621 F.2d 1 (1st Cir. 1980); *Bussey v. Harris*, 611 F.2d 1001 (5th Cir. 1980); *Trinity Memorial Hospital of Cudahy, Inc. v. Associated Hospital Service, Inc.*, 570 F.2d 660 (7th Cir. 1977); *South Windsor Convalescent Home, Inc. v. Mathews*, 541 F.2d 910 (2d Cir. 1976); *St. Louis University v. Blue Cross Hospital Service*, 537 F.2d 283 (8th Cir.), *cert. denied sub nom. Faith Hospital Association v. Blue Cross Hospital Service, Inc.*, 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976). As noted later, the courts of appeals have been less than consistent in their interpretation of the scope of section 405(h). *See* text at notes 47–49 *infra*.

20. Appellants' Brief at 13 (emphasis added).

of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or an officer or employee thereof shall be brought under sections 1331 or 1346 of title 28 to recover on any claim arising under this subchapter.[21]

This section was incorporated into the Medicare Act "to the same extent as [it is] applicable."[22] The Secretary contends that section 405(h) precludes the district court from exercising jurisdiction over the APA claim raised by Appellees. However, the law in this circuit is to the contrary.

In *Humana of South Carolina, Inc. v. Califano*,[23] this court held that section 405(h) does not bar a claim brought under the APA. The court noted that "in terms [section 405(h)] bars only actions brought to 'recover on any claim' arising under the Medicare Act."[24] Thus, the court concluded, when a suit is brought "simply to vindicate an interest in procedural regularity, Section [405(h)] is not summoned into play."[25] Finding that holding eminently logical, and discovering that at least one other court of appeals has followed it,[26] we see no reason to override it.

The Secretary argues that since *Humana* was decided, Congress has amended the Medicare Act to require that all challenges to reimbursement regulations, whether substantive or procedural, be brought under 42 U.S.C. § 1395oo rather than under 28 U.S.C. § 1331, and that accordingly, section 405(h) now precludes federal question jurisdiction over such claims. However, as we explain later,[27] the 1980 amendment re-

ferred to did not expand the scope of issues reviewable under section 1395oo, it merely provided expedited review for certain issues arising in reimbursement disputes that are otherwise reviewable under the statute. Accordingly, we hold that section 405(h) does not preclude claims challenging the Secretary's compliance with the APA.

**B. Jurisdiction Over the Substantive Claim**

Jurisdiction over Appellees' challenge to the Secretary's substantive authority to issue the regulation in question is not as easily decided. The Secretary argues that jurisdiction over this claim is precluded by section 405(h). Alternatively, he maintains that Congress has impliedly precluded all judicial review of such claims by expressly providing for judicial review of some Medicare Act claims without expressly authorizing judicial review of claims such as the present one. However, we find both these arguments unpersuasive and hold that the district court had jurisdiction over Appellees' substantive claim.

*1. Preclusion of Jurisdiction Under Section 405(h)*

The Secretary's first argument is based on the premise that section 405(h) precludes federal question jurisdiction over claims for which the Medicare Act provides alternative routes of review. The Secretary then maintains that Appellees could have brought the present action under the provisions of 42 U.S.C. § 1395oo and concludes that jurisdiction under section 1331 is precluded.[28] Although we accept the Secre-

21. 42 U.S.C. § 405(h) (1976).

22. *Id.* § 1395ii (1976).

23. 590 F.2d 1070 (D.C.Cir.1978).

24. *Id.* at 1080 (footnote omitted).

25. *Id.* (footnote omitted).

26. *Daniel Freeman Memorial Hospital v. Schweiker,* 656 F.2d 473, 476 (9th Cir. 1981).

27. *See* text at notes 39–40, *infra.*

28. If jurisdiction did exist under section 1395oo, requiring Appellees to utilize that section would not merely change the basis under which the district court exercised its jurisdiction. It would require Appellees to refrain from attacking the disputed regulation until they filed a cost report with their intermediaries on or before 31 March 1983. Appellees would then be required to file a claim with the Provider Reimbursement Review Board, which would decide the issue. Following a final decision by the Review Board, or a reversal, affirmance, or modification thereof by the Secretary, Appellees could finally press their claim in federal

tary's first premise, we are unable to agree with his second. Accordingly, we must reject his conclusion.

■ a. *The availability of judicial review under section 1395oo.* Section 1395oo was enacted in 1972 to provide for review of an intermediary's decision "as to the amount of total program reimbursement due to the provider."[29] Under section 1395oo initial review of the intermediary's decision is made by the Provider Reimbursement Review Board (PRRB).[30] A provider dissatisfied with the PRRB's decision then has the right to obtain judicial review of that decision, or of any reversal, affirmance, or modification thereof by the Secretary, by filing a civil action in federal district court.[31] We conclude, however, that this route to judicial review is unavailable to Appellees in the present case.

In *Humana* this court noted that "[c]onsideration by the Provider Reimbursement Review Board ... is [confined] to disputes over the amount properly reimbursable."[32] Appellees' substantive claim does not involve a dispute over the amount payable under the Act, nor does it involve Appellees' eligibility for reimbursement. Indeed, Appellees seek no money at all. They merely challenge the *method* of reimbursement, a concern that is not cognizable under section 1395oo.

The Secretary maintains that Appellees' claims are similar to those which we held were precluded by section 405(h) in *Humana* and in *American Association of Medical Colleges v. Califano (AAMC).*[33] However, the claims we found precluded in those cases were fundamentally different from that pressed by Appellees in the present

litigation. In *Humana* the plaintiff challenged regulations limiting the amount of reimbursement, a challenge "unmistakenly directed at upsetting on the merits the Secretary's *determination on an element of cost-reimbursement.*"[34] We held that such a substantive challenge was precluded by section 405(h) because "Humana's fundamental grievance ... centers on the *amount of cost-reimbursement* ... a subject amenable to Review Board adjudication."[35] In *AAMC* a group of Medicare providers challenged a regulation fixing "*limits* on hospital in-patient general routine service *costs.*"[36] We held that the district court did not have federal question jurisdiction because section 405(h) precluded jurisdiction over "*suits seeking* eventual realization of *provider-cost reimbursement* under the Medicare Act."[37] Thus, in both *Humana* and *AAMC* the regulations attacked imposed limits on the *amount* of reimbursement. The issues raised in those cases were directly related to a claim for reimbursement. Appellees' claim, on the other hand, does not directly concern the amount of reimbursement they will receive. As noted above, it concerns the mode of reimbursement.

The Secretary further argues that the only reason Appellees are challenging the instruction is that they fear they will incur compliance costs that will not be fully reimbursed, and that therefore, the substantive claim is one seeking *eventual* realization of provider-cost reimbursement. However, regardless of the Appellees' motivation for bringing this suit, reimbursement is not its ultimate goal. Appellees seek to enjoin the Secretary from changing the method of processing payment claims. Granting the

court. Thus, the Secretary's argument is of more than academic interest.

**29.** 42 U.S.C. § 1395oo (a)(1)(A) (1976). Section 1395oo review is also available when the intermediary fails to make a final decision in a timely manner, *id.* § 1395oo (a)(1)(B) & (C), a situation clearly not involved here.

**30.** *Id.* § 1395oo (a) (1976).

**31.** *Id.* § 1395oo (f)(1) (Supp. IV 1980).

**32.** *Humana,* 590 F.2d at 1081 (footnote omitted).

**33.** 569 F.2d 101 (D.C.Cir.1977).

**34.** *Humana,* 590 F.2d at 1079 (emphasis added).

**35.** *Id.* (emphasis added).

**36.** *AAMC,* 569 F.2d at 104.

**37.** *Id.* at 107 (emphasis added).

requested relief will not enable Appellees to receive larger reimbursements. As the district court recognized, Appellees "do not seek any type of eventual monetary recovery on a reimbursement claim by this action."[38]

Finally, the Secretary argues that if claims such as the Appellees' were not previously encompassed by the section 1395oo review provisions, they were brought under that section by a 1980 amendment to the Medicare Act. The 1980 amendment allows a provider "to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the [PRRB] determines ... that it is without authority to decide the question."[39] The Secretary contends that the amendment evidences Congress' intent that claims related in any way to reimbursement disputes be challenged pursuant to section 1395oo rather than under section 1331. However, the legislative history behind the amendment reveals that it was not intended to broaden the scope of issues judicially reviewable under section 1395oo.[40] The 1980 amendment merely permits expedited judicial review of certain issues arising in reimbursement disputes *otherwise reviewable under the statute.* As explained above, the present claim cannot be characterized as a reimbursement dispute. Therefore, the 1980 amendment does not alter the justiciability of this claim under section 1395oo.

Because there is no alternative form of judicial review available to Appellees under the Medicare Act, the Secretary's first argument would appear to fail. However, because that argument is premised on the assumption that section 405(h) precludes only those claims for which the Medicare Act provides an alternative form of judicial review, the Secretary's conclusion would still be correct if section 405(h) barred claims arising under the Medicare Act for which no alternative form of judicial review is available. Thus, we must next determine the scope of section 405(h)'s preclusion.[41]

b. *The scope of section 405(h).* In *Weinberger v. Salfi*[42] the Supreme Court held that section 405(h) precluded the exercise of federal question jurisdiction over a constitutional challenge to various provisions of the Social Security Act. However, the Court found that the challenge could be brought under a separate provision of the Social Security Act,[43] thereby implying that the result might have been different had no alternative form of judicial review been available.[44] Since *Salfi* the various courts of appeal have grappled with the issue of whether section 405(h) precludes federal question jurisdiction when no alternative form of judicial review is available.[45] Every court that has considered the issue has agreed that section 405(h) should be read so as to permit *some* avenue of judicial review for *constitutional* claims.[46] However, the

---

**38.** *Schweiker, slip op.* at 10.

**39.** 1980 Omnibus Budget Reconciliation Act, Pub.L.No. 96–499, § 955, 94 Stat. 2599, 2647 (1980).

**40.** *See* H.R.Rep.No. 1167, 96th Cong., 2d Sess. 394, *reprinted in* 1980 U.S.Code Cong. & Ad. News 5526, 5757.

**41.** On appeal the Secretary addressed this issue only in a footnote, Appellants' Brief at 24 n.22, despite the district court's observation that its resolution was "far from clear." *Schweiker, slip op.* at 5.

**42.** 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

**43.** 42 U.S.C. § 405(g) (Supp. IV 1980). This provision, unlike section 405(h), was not incor-

porated into the Medicare Act. *See* 42 U.S.C. § 1395ii (1976).

**44.** *Salfi,* 422 U.S. at 762, 95 S.Ct. at 2465.

**45.** See cases cited in note 19, *supra.*

**46.** *Bussey v. Harris,* 611 F.2d 1001, 1005 (5th Cir. 1980); *Hospital San Jorge, Inc. v. U. S. Secretary of HEW,* 598 F.2d 684, 686 (1st Cir. 1979); *Dr. John T. MacDonald Foundation, Inc. v. Califano,* 571 F.2d 328, 331–32 (5th Cir.), *cert. denied,* 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978); *Trinity Memorial Hospital of Cudahy, Inc. v. Associated Hospital Service, Inc.,* 570 F.2d 660, 667 (7th Cir. 1977); *South Windsor Convalescent Home, Inc. v. Mathews,* 541 F.2d 910, 913–14 (2d Cir. 1976); *St. Louis University v. Blue Cross Hospital Service,* 537 F.2d 283, 291–93 (8th Cir.), *cert. denied sub*

result has not been so harmonious when the same courts have considered the effect of section 405(h) on otherwise non-reviewable *statutory* claims.

■ Three circuit courts have held that section 405(h) precludes all federal courts from exercising jurisdiction over claims arising under the Medicare Act even when no alternative form of judicial review is available.[47] Two courts of appeals have held that section 405(h) precludes the exercise of federal question jurisdiction over claims for which no alternative form of judicial review is available, but only after concluding that the Court of Claims had jurisdiction over such claims.[48] Finally, two circuit courts, the Sixth and the Second, along with the Court of Claims, have held that section 405(h) is not a bar to claims arising under the Medicare Act when there is no alternative form of judicial review available.[49] We agree with the district court that the view espoused by the Sixth and Second Circuits and the Court of Claims is the correct one.

■ We start with the well established principle that an agency bears a "heavy burden of overcoming the strong presumption that Congress did not mean to prohibit all judicial review" of an agency decision.[50] Thus, "only upon a showing of 'clear and convincing evidence' of a contrary legisla-

tive intent should the courts restrict access to judicial review."[51] We conclude that the Secretary has failed to meet this heavy burden.

First, the Secretary has cited no legislative history which indicates that Congress intended to preclude jurisdiction over claims for which there was no alternative form of judicial review. Indeed, section 405(h) was incorporated into the Medicare Act only to the extent it was applicable.[52] "[T]he entire thrust of the section is to prevent claimants who seek judicial review of their claims for benefits from bypassing the specific procedural requirements provided by Congress in the various acts."[53] Thus, "[t]he subsection does not have a meaningful application in a case where no statutory review mechanism is available."[54]

■ Second, precluding review of claims like the present one does not further the policy which led Congress to incorporate section 405(h) into the Medicare Act. As the Eighth Circuit noted, Congress adopted section 405(h) because permitting

[j]udicial review of the amount of all Medicare payments would bring the courts into the complex interplay between physician and hospital in ascertaining the appropriate medical charges for technical services .... These charges

---

nom. *Faith Hospital Association v. Blue Cross Hospital Service, Inc.,* 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976).

**47.** *Kechijian v. Califano,* 621 F.2d 1 (1st Cir. 1980); *Hospital San Jorge, Inc. v. U. S. Secretary of HEW,* 598 F.2d 684, 686 (1st Cir. 1979); *Trinity Memorial Hospital of Cudahy, Inc. v. Associated Hospital Service, Inc.,* 570 F.2d 660, 666 (7th Cir. 1977); *St. Louis University v. Blue Cross Hospital Service,* 537 F.2d 283, 287–89 (8th Cir. 1976). The Seventh Circuit noted that a federal court might have jurisdiction to review a decision by the Secretary if it were "in direct conflict with an express mandate of the Medicare Act." *Trinity Memorial,* 570 F.2d at 666 n.9.

**48.** *Drennan v. Harris,* 606 F.2d 846, 850 (9th Cir. 1979); *Dr. John T. MacDonald Foundation, Inc. v. Califano,* 571 F.2d 328, 332 (5th Cir.), *cert. denied,* 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978).

**49.** *Chelsea Community Hospital, SNF v. Michigan Blue Cross Association,* 630 F.2d 1131, 1134–36 (6th Cir. 1980); *United States v. Aquavella,* 615 F.2d 12, 20–21 (2d Cir. 1979); *Whitecliff, Inc. v. United States,* 536 F.2d 347, 351 (Ct.Cl.1976), *cert. denied,* 430 U.S. 969 (1977).

**50.** *Dunlop v. Bachowski,* 421 U.S. 560, 567, 95 S.Ct. 1851, 1857, 44 L.Ed.2d 377 (1975).

**51.** *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 1510–11, 18 L.Ed.2d 681 (1967). *See also Rusk v. Court,* 369 U.S. 367, 379–80, 82 S.Ct. 787, 794, 7 L.Ed.2d 809 (1962).

**52.** 42 U.S.C. § 1395ii (1976).

**53.** *Aquavella,* 615 F.2d at 19.

**54.** *Chelsea Community Hospital,* 630 F.2d at 1135.

are subject to extensive and complicated statutory guidelines ·and regulations. . . . Determining the proper amount of these charges is a matter peculiarly suited to determination by a specialized agency.[55] These concerns are not present when actions like the present one are brought to challenge secretarial action unrelated to reimbursement disputes.[56] Finding no clear and convincing evidence to the contrary, we conclude that Congress, by incorporating section 405(h) into the Medicare Act to the extent applicable, did not intend to preclude judicial review of claims for which no alternative form of judicial review was available. Accordingly, we reject the Secretary's argument that section 405(h) precludes jurisdiction in the present case.

### 2. Implied Preclusion of Jurisdiction

In his reply brief the Secretary argues that even if jurisdiction is not precluded by section 405(h), it is nevertheless barred in view of Congress' express delineation of the kinds of claims which may be reviewed under the Medicare Act. Relying on *United States v. Erika, Inc.,*[57] the Secretary maintains that since Congress expressly made certain types of cases reviewable under the Medicare Act, issues not reviewable under section 1395oo are not reviewable at all. A review of the Supreme Court's decision in *Erika,* however, indicates that the case does not support the Secretary's point of view.

In *Erika* a physician brought a claim for reimbursement under Part B of the Medicare Act. That part of the Act provides for judicial review of the Agency's determination concerning the physician's *eligibility* for payments, but does not contain a provision permitting review of the Agency's determination of the *amount* of reimbursement. The Supreme Court noted that Congress had provided judicial review for both eligibility and amount determinations under Part A of the Medicare Act, but had provided for judicial review of only eligibility determinations under Part B.[58] The Court also examined statements from the legislative history of the Medicare Act and subsequent amendments which clearly indicated an intent to restrict the appealability of amount determinations under Part B.[59] In the face of these "expressions of legislative intent [which] unambiguously support our reading of the statutory language," the Court concluded that judicial review of amount determinations under Part B of the Act was precluded.[60]

The reasoning utilized by the Supreme Court in *Erika* does not apply to the present claim which was brought under Part A of the Medicare Act. As noted earlier, the general presumption is in favor of judicial review.[61] In *Erika* the government overcame this presumption by presenting clear and convincing evidence that Congress intended to preclude judicial review. The Secretary argues that the precisely drawn review provisions of Part A,[62]

---

**55.** *St. Louis University,* 537 F.2d at 289.

**56.** We do not mean to imply that a federal court may disregard section 405(h) anytime the concerns expressed above are not present. To do so would be to disregard the Supreme Court's statement that "the third sentence of § 405(h) is more than a codified requirement of administrative exhaustion." *Weinberger v. Salfi,* 422 U.S. 749, 757, 95 S.Ct. 2457, 2463, 45 L.Ed.2d 522 (1975). We note that the articulated concerns are not implicated by allowing courts to decide cases such as the present one only to show that our reading of the statute is reasonable. When section 405(h) does apply, its effect cannot be avoided by resort to exceptions to the administrative exhaustion requirement. *See id.*

**57.** 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982).

**58.** *Id.* at 206–08, 102 S.Ct. at 1653 54.

**59.** *Id.* at 208–10 & nn.11–13, 102 S.Ct. at 1654–55 & nn.11–13.

**60.** *Id.* at 210, 102 S.Ct. at 1655.

**61.** *Dunlop v. Bachowski,* 421 U.S. 560, 567, 95 S.Ct. 1851, 1857, 44 L.Ed.2d 377 (1975); *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967); *Rusk v. Court,* 369 U.S. 367, 379–80, 82 S.Ct. 787, 794, 7 L.Ed.2d 809 (1962).

**62.** At the inception of the Medicare Act in 1965, part A providers were entitled to judicial

coupled with the omission of an express provision of judicial review for claims like the present one, provides the requisite clear and convincing evidence of Congressional intent to preclude judicial review. However, " '[t]he mere fact that some acts are made reviewable should not suffice to support an implication of exclusion as to others. The right to review is too important to be excluded on such slender and indeterminate evidence of legislative intent.' "[63] Where, as here, the statutory language and legislative history is devoid of even the slightest intimation that Congress intended to preclude judicial review over the issues raised by Appellees, the mere fact that other types of issues are expressly reviewable under the Medicare Act does not constitute the clear and convincing evidence needed to overcome the presumption in favor of judicial review. Therefore, we reject the Secretary's second argument, and hold that the district court properly exercised its jurisdiction in the present case.

### III. THE SECRETARY'S AUTHORITY TO REQUIRE THAT HHAs DEAL WITH REGIONAL INTERMEDIARIES

The central issue in this case concerns the Secretary's authority to require freestanding HHAs to submit their claims to designated regional intermediaries for processing and payment. The resolution of this issue requires us to determine the relationship among three provisions of the original Medicare Act, sections 1395g, 1395h, and 1395kk.

Section 1395g of the Medicare Act provides:

> The Secretary shall periodically determine the amount which should be paid under this part to each provider of services with respect to the services furnished by it, and the provider of services shall be paid at such time or times as the Secretary believes appropriate (but not less than monthly) . . . the amounts so determined . . . .[64]

Appellees argue, and the district court held that this section gives HHAs the right to have their reimbursement determinations and payments made directly by the Secretary. Appellees maintain that the Secretary is authorized to delegate this responsibility to an intermediary only if the HHA elects to have payments made through an intermediary under section 1395h(a).[65] The Secretary, on the other hand, contends that whatever right is conferred on an HHA by section 1395g is limited by his authority under section 1395kk to "perform any of his functions under this subchapter directly, or by contract providing for payment in advance or by way of reimbursement . . . as the Secretary may deem necessary."[66]

---

review only on issues relating to their eligibility as qualified providers. 42 U.S.C. § 1395ff(c) (1976). *See* S.Rep.No. 404, 89th Cong., 1st Sess. 54–55, *reprinted in* 1965 U.S.Code Cong. & Ad.News 1943, 1995. In 1972 and again in 1974, the Act was amended to permit providers to obtain judicial review of amount determinations as well. *See* 42 U.S.C. § 1395*oo*(a)–(e) (1976).

**63.** *Abbott Laboratories,* 387 U.S. at 141, 87 S.Ct. at 1511 (quoting L. Jaffe, Judicial Control of Administrative Action 357 (1965)).

**64.** 42 U.S.C. § 1395g(a) (1976).

**65.** *Id.* § 1395h(a) (Supp. IV 1980). In pertinent part the statute provides:

> If any group or association of providers of services wishes to have payments under this part to such providers made through a national, State, or other public or private agency or organization and nominates such agency or organization for this purpose, the Sec-

retary is authorized to enter into an agreement with such agency or organization providing for the determination by such agency or organization . . . of the amount of the payments required pursuant to this part to be made to such providers . . . and for the making of such payments by such agency or organization to such providers . . . .

**66.** *Id.* § 1395kk(a) (1976). In full the statute provides:

> Except as otherwise provided in this subchapter and in the Railroad Retirement Act of 1974, the insurance programs established by this subchapter shall be administered by the Secretary. The Secretary may perform any of his functions under this subchapter directly, or by contract providing for payment in advance or by way of reimbursement, and in such installments, as the Secretary may deem necessary.

Thus, under the Secretary's view, section 1395g merely requires the Secretary periodically to determine the amount due a provider and to pay that amount at least monthly. Section 1395kk then gives him the authority to contract out those reimbursement functions as he deems necessary.

The Secretary's interpretation of the statute appears to be the correct one. Since *McCulloch v. Maryland*[67] it has been a general rule of construction that a government entity empowered to perform a function has the authority to use any reasonable tools and means to carry out that function. Thus, that Congress would authorize the Secretary to perform *any* of his Medicare functions, including his reimbursement functions, either directly or indirectly is not at all surprising. The need for such flexibility is obvious when one considers the numerous responsibilities assigned to the Secretary under the Medicare Act.

Moreover, the Secretary's contention that section 1395kk empowers him to contract out his reimbursement responsibilities is bolstered by the Senate Finance Committee's Report on the Medicare Act, which states:

> Under the [proposed bill], nominated organizations having experience with cost reimbursement could determine the amount of payments and make such payments whether under part A or part B. *In the absence of a suitable nominated organization, the Secretary could contract out all or part of this service or handle the function directly.*[68]

The House also recognized the broad scope of section 1395kk, noting in its report:

Section [1395kk] provides that, except as otherwise stated, the programs established by title XVIII are to be administered by the Secretary, who may perform *any* of his functions directly or by contract.[69]

■ Therefore, the clear and reasonable language of the Act, reinforced by appropriate statements from its legislative history, appears to give the Secretary the unequivocal right to designate intermediaries to perform his reimbursement functions and to require that HHAs deal with those intermediaries.

The district court gave three reasons for not adopting this seemingly reasonable interpretation. First, the court found that Congress had repeatedly expressed its understanding that providers had the unqualified option of dealing directly with the Secretary. Second, the structure of subsequent amendments to the original Medicare Act indicated to the court that Congress did not believe that the Secretary was empowered to appoint intermediaries for HHAs wishing to deal directly with the Secretary. Finally, the court was persuaded by the Secretary's apparent acquiescence in a 1966 Assistant General Counsel opinion stating that the Secretary did not have the right to designate an intermediary for a provider who did not elect to be served by one. Appellees urge us to adopt the district court's reasoning.[70] However, after examining that reasoning carefully, we remain convinced that there is no need to deviate from the reasonable interpretation advanced by the Secretary.

---

**67.** 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819).

**68.** S.Rep.No. 404, 89th Cong., 1st Sess. 53, *reprinted in* 1965 U.S.Code Cong. & Ad.News 1943, 1994 (emphasis added). Appellees argue that the quoted language refers only to the situation in which a provider elects to use an intermediary, but fails to nominate a suitable one. However, nothing in the report suggests that the language should be read so narrowly.

**69.** H.R.Rep.No. 213, 89th Cong., 1st Sess. 174 (1965) (emphasis added).

**70.** Appellees also argue that the lower court's ruling was correct because as a matter of statutory construction the specific features of section 1395g override the more general provisions of section 1395kk. Rather than quibble over which section is more specific, we merely note that the interpretation we adopt is reasonable and supported by the relevant legislative history. It also gives effect to both provisions in question. In such circumstances, the rule of statutory construction cited by Appellees is not particularly useful.

### A. Congressional Expressions Concerning a Provider's Right to Deal Directly With the Secretary

The district court was influenced by what it described as "continuing expressions of Congressional understanding that Medicare providers have the option to receive payment from the government directly."[71] However, a close examination of the context in which these expressions were made reveals that Congress was not addressing the issue presently being considered. The statements at most indicate that providers may at times elect to deal with the Secretary. They in no way evidence an intent to abrogate the Secretary's right to conduct his business through an intermediary if *he* so chooses.

The first statement relied upon by the district court is excerpted from both the Senate and House reports on the original Medicare Act.

A member of an association whose nominated organization or agency had been selected as a fiscal intermediary could elect to receive payment from another intermediary which had been selected (provided that the other organization or agency agrees) or could elect to deal directly with the Secretary.[72]

It is clear from the context of this statement[73] that the part of the Medicare Act being discussed is section 1395h(d).[74] Sec-

tion 1395h(d) gives a provider who is a member of an association the right to refuse to use an intermediary chosen by the association. Thus, the quoted language merely indicates that a member of an association cannot be bound by the *association's* choice of an intermediary. It in no way intimates that the *Secretary* cannot make such a choice.

The next reference relied upon by the district court is likewise an explanation of section 1395h(d). Explicitly referring to that section, both Committees noted:

Section [1395h(d)] provides that if the nomination of an [intermediary] is made by a group or association of providers of services, it will not be binding on members of such group or association which notify the Secretary of their election to that effect. . . . Any provider which has withdrawn its nomination (and any provider which has not made a nomination) may elect to receive payments either directly from the Secretary or from any agency or organization which has entered into an agreement with the Secretary . . . .[75]

Again, the statement merely indicates that the association's choice of an intermediary is not binding on its members. It does not negate the Secretary's authority to designate intermediaries if in his judgment

---

71. *Schweiker, slip op.* at 15.

72. S.Rep.No. 404, 89th Cong., 1st Sess. 52, *reprinted in* 1965 U.S.Code Cong. & Ad.News 1943, 1993; H.R.Rep.No. 213, 89th Cong., 1st Sess. 45 (1965).

73. The statement is in a portion of the report discussing "General provisions relating to the basic and voluntary supplemental plans," so it does not expressly refer to a particular section. Nevertheless, the entire statement refers to providers who belong to an association which has elected an intermediary to which a member of the association objects. The similarity between the quoted language and the statements used to describe the effect of section 1395h(d) further indicate that the quoted language refers to that section. *See* text at note 75, *infra.*

74. 42 U.S.C. § 1395h(d) (1976). In full the section provides:

If the nomination of an agency or organization as provided in this section is made by a

group or association of providers of services, it shall not be binding on members of the group or association which notify the Secretary of their election to that effect. Any provider may, upon such notice as may be specified in the agreement under this section with an agency or organization, withdraw its nomination to receive payments through such agency or organization. Any provider which has withdrawn its nomination, and any provider which has not made a nomination, may elect to receive payments from any agency or organization which has entered into an agreement with the Secretary under this section if the Secretary and such organization agree to it.

75. S.Rep.No. 404, 89th Cong., 1st Sess. 164–65, *reprinted in* U.S.Code Cong. & Ad.News 1943, 2104; H.R.Rep.No. 213, 89th Cong., 1st Sess. 147–48 (1965).

that would be the best way to administer his responsibilities.

The final expressions of Congressional intent which the district court found persuasive were made in 1977 and 1980, when Congress amended section 1395h.[76] These expressions, like the previous ones, do not cast any doubt on the Secretary's right to conduct his business through an intermediary.

In 1977 several provisions were added to section 1395h. The House Committee on Ways and Means and the House Committee on Interstate and Foreign Commerce set forth their understanding of the pre-amendment law as follows:

> Under part A of medicare, groups or associations of providers of services, *i.e.,* ... home health agencies, can nominate an organization to act as a fiscal intermediary between the providers and the Secretary. An individual member of an association or group of providers which has nominated one organization as intermediary may select some other organization as its intermediary if this is satisfactory to the organization and the Secretary, or alternatively, it may elect to deal directly with the Secretary.[77]

This again appears to be an explanation of section 1395h(d). It therefore does not justify imposing any limits on the language of section 1395kk.

In 1980 when section 1395h was again amended, this time by adding a provision requiring the Secretary to designate regional intermediaries for freestanding HHAs electing to use an intermediary, the Conference Committee Report contained the following language, which Appellees assert clearly evidences Congress' understanding that HHAs had the unlimited right to deal directly with the Secretary. "In requiring the designation of regional intermediaries

for home health agencies, it is not the intent of the conferees that home health agencies would be precluded from contracting directly with the Health Care Financing Administration."[78] As discussed in the next section,[79] this language merely indicated that the 1980 amendment did not require the Secretary to designate regional intermediaries for all freestanding HHAs, thereby preserving the Secretary's discretion to permit HHAs to deal directly with him. Nothing in the amendment or the quoted language indicates that the Secretary's power under section 1395kk was to be limited by some overriding right of the provider to deal directly with the Secretary.

Thus, nothing in the Congressional expressions relied upon by the district court indicates that section 1395kk is to be read as anything less than an authorization for the Secretary to perform his reimbursement functions through an intermediary. Nor do these expressions contain anything indicating that a provider has an unqualified right under section 1395g to deal directly with the Secretary. Therefore, these expressions do not persuade us to alter our view that section 1395kk authorizes the Secretary to issue the regulation in question.

**B. *The Effect and Implication of the 1977 and 1980 Amendments***

Both parties point to the structure and language of the 1977 and 1980 amendments as support for their divergent conclusions. However, we find the two amendments largely irrelevant to the question at hand because they neither increase nor limit the Secretary's power under section 1395kk.

■ The 1977 amendment authorized the Secretary to "assign or reassign any provider of services" to an intermediary if he determined, after applying certain stan-

---

**76.** The substance and effect of these amendments is discussed later. *See* text at notes 80-85, *infra.*

**77.** H.R.Rep.No. 393, Part I, 95th Cong., 1st Sess. 68 (1977); H.R.Rep.No. 393, Part II, 95th Cong., 1st Sess. 76 (1977), U.S.Code Cong. & Admin.News 1977, pp. 3039, 3079.

**78.** H.Rep.No. 1479, 96th Cong., 2d Sess. 129 (1980), U.S.Code Cong. & Admin.News 1980, pp. 5526, 5920.

**79.** *See* text at notes 84-85, *infra.*

dards, criteria, and procedures, "that such designation would result in more effective and efficient administration" of the Medicare program.[80] Contrary to the Secretary's argument that this amendment confirmed or increased his authority to contract out his provider reimbursement functions, we conclude that the amendment merely authorized the Secretary to appoint new intermediaries for providers who had previously elected to use one.

The 1977 amendment, entitled "The Medicare-Medicaid Antifraud and Abuse Amendment," was designed to give the Secretary power to deal with the potential problems caused by allowing a provider to chose his own intermediary. The providers' power to nominate or dismiss an intermediary, it was feared, had caused some intermediaries to be overly generous in determining the amounts due a provider under the Act.[81] The amendment therefore required the Secretary to develop precise and uniform standards and criteria for evaluating an intermediary's performance, so that the Secretary would know when an intermediary's performance was unsatisfactory.[82] In such situations the Secretary was authorized to assign the provider to a new intermediary. The inclusion of the term "*assign* or reassign" seems to refer to providers who nominate an intermediary whose performance has already been judged unsuitable, and not to providers who are dealing directly with the Secretary. This interpretation is consistent with the structure of the amendment since the new provisions were tacked onto section 1395h, the section giving providers the right to nominate an intermediary.[83]

The 1977 amendment did not, therefore, increase the Secretary's authority to require an HHA to deal with an intermediary against his will, a power the Secretary already possessed under section 1395kk. But neither did it limit that power. The amendment simply provided the Secretary with an additional tool for dealing with potential intermediary-provider collusion.

■ Similarly, the 1980 amendment did not affect the Secretary's section 1395kk power one way or the other. That legislation provided: "[T]he Secretary shall designate regional agencies or organizations which have entered into an agreement with him under this section to perform functions under such agreement with respect to [freestanding] home health agencies ... in the region."[84] Despite this seemingly mandatory language, it is clear that the amendment did not require the Secretary to assign all freestanding HHAs to regional intermediaries. Rather, the amendment only required the Secretary to designate which intermediary an HHA would use if the HHA elected to use one at all. As noted previously, the House conferees were careful to point out that "[i]n requiring the designation of regional intermediaries for home health agencies, it is not the intent of the conferees that home health agencies would be precluded from contracting directly with the Health Care Financing Administration."[85] At the same time, however, the amendment did nothing to limit the Secretary's already existing power to require that HHAs deal with an intermediary if he felt it was proper. Thus, neither the 1977

**80.** Medicare-Medicaid Anti-Fraud and Abuse Amendments of 1977, Pub.L.No. 95–142, 91 Stat. 1175, 1199 (1977) (codified at 42 U.S.C. §§ 1395h(e)(1), (2), (3), & 1395h(f) (Supp. IV 1980)).

**81.** *See* H.R.Rep.No. 393, Part I, 95th Cong., 1st Sess. 68–69 (1977); H.R.Rep.No. 393, Part II, 95th Cong., 1st Sess. 76–77 (1977).

**82.** H.R.Rep.No. 393, Part I, 95th Cong., 1st Sess. 69 (1977); H.R.Rep.No. 393, Part II, 95th Cong., 1st Sess. 77 (1977).

**83.** 42 U.S.C. § 1395h(a) (Supp. IV 1980).

**84.** Omnibus Budget Reconciliation Act of 1980, Pub.L.No.96–499, § 930(*o*), 94 Stat. 2599, 2632 (1980) (codified at 42 U.S.C. § 1395(e)(4) (Supp.1980)). Provider-based HHAs are to be reassigned only if the Secretary determines, after applying specified criteria, that such assignment will result "in the more effective and efficient administration" of the Medicare program. *Id.*

**85.** H.Conf.Rep.No. 1479, 96th Cong., 2d Sess. 129 (1980), U.S.Code Cong. & Admin.News 1980, p. 5920.

nor the 1980 amendment affected the Secretary's section 1395kk power to perform his reimbursement tasks through intermediaries, a power that the Secretary can use to issue regulations like the present one.

## C. The Effect of the 1966 Assistant General Counsel Opinion

The district court determined that until the issuance of the December 1981 instruction, the Secretary had consistently interpreted the Medicare Act as legally requiring him to deal directly with providers electing to do so. In reaching this conclusion, the court relied on a 1966 opinion of the Department of Health, Education and Welfare's (now Health and Human Services) Assistant General Counsel stating that the Secretary did not have the right to designate an intermediary for a provider who did not want to be served by an intermediary [86] and by the Secretary's failure to use this power until almost sixteen years later.[87] While recognizing that the General Counsel's opinion was not binding on the parties, the district court found that, coupled with the Secretary's acquiescence, it was strong evidence that the Secretary's present interpretation of section 1395kk was incorrect.

However, we find that the court erred in placing such great reliance on the actions of the General Counsel and the Secretary. First, when an agency expresses doubts as to its statutory authority to act, such expressions are not binding on a court, nor are they due the same deference given to agency determinations requiring special agency competence.[88] As this Court observed in a similar situation, "[when] the question is simply one of statutory interpretation . . . [calling] largely for the exercise of historical analysis and logical and analogical reasoning, it is the everyday staple of judges as well as agencies."[89] Moreover, the 1966 Assistant General Counsel's opinion did not take into account the legislative history which supports the Secretary's present position.[90] Further, subsequent opinions issued by the same office expressly recognized the Secretary's power to require HHAs to deal with intermediaries.[91] Thus, this isolated opinion questioning the Secretary's statutory authority is not enough to persuade us that we should ignore the otherwise clear language of section 1395kk.

Nor is the Secretary's fifteen-year failure to utilize his section 1395kk power determi-

---

**86.** Memorandum from Melvin Blumenthal, Assistant General Counsel, Health Insurance Division, Department of Health, Education and Welfare (23 Feb. 1966).

**87.** Appellees seek to bolster the district court's conclusion by pointing to the Secretary's own regulations which recognize that providers have the option of dealing directly with the Secretary. 42 C.F.R. § 421.103 (1981); 42 C.F.R. § 421.104(b)(2) (1981). They argue that the December 1981 instruction was invalid because it violated these regulations, which have the force and effect of law.

However, the regulations cited do not address the Secretary's authority under section 1395kk, they merely recognize that normally under section 1395h a provider can elect to deal with an intermediary or with the Secretary. Even if the regulations did conflict with the December 1981 instruction, Appellees' argument would still not be persuasive. This court has recognized that an agency's departure from its regulations or past practice is sanctioned as long as it provides a rational explanation for its actions. *Greater Boston Television Corp. v. Federal Communications Commission,* 444 F.2d 841, 852 (D.C.Cir.1970), *cert. denied,* 403 U.S.

923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971). If, as we hold, section 1395kk authorizes the Secretary to issue the instruction in question, the Secretary cannot destroy that authority by promulgating regulations.

**88.** *National Petroleum Refiners Association v. Federal Trade Commission,* 482 F.2d 672, 694 (D.C.Cir.1973), *cert. denied,* 415 U.S. 951, 94 S.Ct. 1475, 39 L.Ed.2d 567 (1974).

**89.** *Id.*

**90.** S.Rep.No. 404, 89th Cong., 1st Sess. 53, *reprinted in* 1965 U.S.Code Cong. & Ad.News 1943, 1994; H.R.Rep.No. 213, 89th Cong., 1st Sess. 174 (1965) (discussed in text accompanying notes 68–69, *supra* ).

**91.** Memorandum from Juan A. del Real, General Counsel, Department of Health and Human Services 4, 6–7 (11 Jan. 1982); Memorandum from Hank Eigles, Office of General Counsel, Health Care Financing Division, Department of Health and Human Services 5–6 (Dec. 10, 1980).

native. As the Supreme Court explained in a similar situation:

> The fact that powers long have been unexercised well may call for close scrutiny as to whether they exist; but if granted, they are not lost by being allowed to lie dormant, any more than nonexistent powers can be prescripted by an unchallenged exercise. We know that unquestioned powers are sometimes unexercised from lack of funds, motives of expediency, or the competition of more important concerns.[92]

The Secretary's authority to contract out his reimbursement responsibilities did not dwindle away over time as he chose not to use it. Congress conferred that authority upon the Secretary and only Congress could withdraw it. Neither the Office of General Counsel by its opinions, nor the Secretary by his inaction could diminish that authority in the least.

Because we find that Congress in 1965 chose to give the Secretary the power to contract out his reimbursement responsibilities, we hold that the Secretary may now use that power to require freestanding HHAs to seek reimbursement determinations and payments through an intermediary. However, when utilizing that power the Secretary must comply with the procedural requirements imposed by law. It is to those requirements that we now turn our attention.

## IV. THE SECRETARY'S COMPLIANCE WITH THE APA

Section 553 of the APA outlines the procedures an agency must follow when promulgating rules. Most notably, the agency is required to provide the public with general notice of its intent to act and to afford all interested parties an opportunity to comment on the proposed action.[93] The Secretary in the present litigation does not contest the district court's ruling that the December 1981 instruction was a rule within the meaning of the APA.[94] Nor does he dispute the court's finding that he failed to comply with the notice and comment provisions of section 553. However,

---

**92.** *United States v. Morton Salt Co.,* 338 U.S. 632, 647–48, 70 S.Ct. 357, 366–67, 94 L.Ed. 401 (1950). *See also Warner-Lambert Co. v. Federal Trade Commission,* 562 F.2d 749, 759 (D.C. Cir.1977), *cert. denied,* 435 U.S. 950, 98 S.Ct. 1575, 55 L.Ed.2d 800 (1978).

**93.** In pertinent part, the section provides:

> (b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—
> (1) a statement of the time, place, and nature of public rule making proceedings;
> (2) reference to the legal authority under which the rule is proposed; and
> (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.
> Except when notice or hearing is required by statute, this subsection does not apply—
> (A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or
> (B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

> (c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection.
> 5 U.S.C. § 553(b) & (c) (1976).

**94.** The APA defines a rule as

> the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs, or accounting, or practices bearing on any of the foregoing.
> 5 U.S.C. § 551(4) (1976).

the Secretary maintains that his actions were proper because the December 1981 instruction was a rule of agency procedure exempt from section 553's notice and comment requirements.[95] Thus, the procedural validity of the Secretary's actions depends on whether the December 1981 instruction can be brought within this "limited" exception.[96] We hold that it cannot.

Exceptions to the notice and comment provisions of section 553 are to be recognized "only reluctantly."[97] Otherwise, the salutory purposes behind the provisions would be defeated. The notice and comment requirements were included in the APA for two main reasons. First, "to reintroduce public participation and fairness to affected parties after governmental authority has been delegated to unrepresentative agencies."[98] And second, to "assure[ ] that the agency will have before it the facts and information relevant to a particular administrative problem, as well as suggestions for alternative solutions."[99] This dual purpose of fairness and agency self-education is advanced if "[e]xceptions [are] recognized only where the need for public participation is overcome by good cause to suspend it, or where the need is too small to warrant it."[100] Therefore, the "exception of section 553(b)(A) ... does not extend to those procedural rules that depart from existing practice and have a substantial impact on those regulated."[101] Or, to use the words of this court, "[t]he exemption [for rules of agency procedure] cannot apply ... where the agency action trenches on substantive rights and interests."[102]

The December 1981 instruction does substantially affect the rights and interests of freestanding HHAs. Although we have held that these HHAs do not have an unlimited statutory right to deal directly with the Secretary, it is undisputed that for sixteen years freestanding HHAs had the option of choosing to deal with the Secretary or with an intermediary. Thus, freestanding HHAs had at least a qualified right to choose with whom they dealt. The December 1981 instruction foreclosed that option, eliminating the qualified right. Furthermore, the elimination· of this right will cause freestanding HHAs great expense and inconvenience. Appellees presented uncontradicted evidence that the transfer will cost an estimated $10 million to $30 million. Many HHAs will be required to change or scrap electronic billing systems which have been designed to interface with equipment used by the Secretary. Numerous HHAs will be required to train and re-educate employees to implement the new system and operate within the guidelines of the new intermediary. This potential inconvenience was exacerbated by the Secretary's decision to speed up implementation of the transfer to 10 March 1982. The disruption caused by the transfer may not be great enough to persuade the Secretary to rescind the instruction, but the potential impact is such that the fairness element of section 553 requires that the HHAs involved be given a chance to present their case to the Secretary before he acts.

**95.** Section 553(b)(A) provides: "Except when a notice or hearing is required by statute, this subsection does not apply—to interpretative rules, general statements of policy *or rules of agency organization, procedure, or practice* ...." 5 U.S.C. § 553(b)(A) (1970) (emphasis added).

**96.** *Batterton v. Marshall,* 648 F.2d 694, 701 (D.C.Cir.1980).

**97.** *Humana,* 590 F.2d at 1082.

**98.** *Batterton,* 648 F.2d at 703 (footnote omitted). *See also Pickus v. United States Board of Parole,* 507 F.2d 1107, 1112 (D.C.Cir.1974).

**99.** *Guardian Federal Savings & Loan Association v. Federal Savings & Loan Insurance Corp.,* 589 F.2d 658, 662 (D.C.Cir.1978). *See also Brown Express, Inc. v. United States,* 607 F.2d 695, 701 (5th Cir. 1979); *Pickus v. United States Board of Parole,* 507 F.2d 1107, 1112 (D.C.Cir.1974); *Texaco, Inc. v. Federal Power Commission,* 412 F.2d 740, 744 (3d Cir. 1969).

**100.** *Batterton,* 648 F.2d at 704 (footnote omitted).

**101.** *Brown Express, Inc. v. United States,* 607 F.2d 695, 702 (5th Cir. 1979).

**102.** *Batterton,* 648 F.2d at 708 (footnote omitted).

In addition, other decisions made by the Secretary in the December 1981 instruction were such that he could have benefited from the HHAs' viewpoint. The December 1981 instruction not only foreclosed free-standing HHAs from dealing directly with the Secretary, it also delineated the regions to be served by each intermediary and designated which intermediary would be chosen as the intermediary for each region. It is hard to imagine that HHAs, which had been dealing with the various intermediaries and working with the Medicare system for years, would not be able to provide the Secretary with valuable information concerning the most efficacious manner in which the regions could be organized and insights about the various organizations which might be chosen as regional intermediaries.

Thus, compliance with the notice and comment requirements of section 553 would not only result in increased fairness to free-standing HHAs, it would also enable the Secretary to receive valuable information concerning the various issues involved before he chose his course of direction. In such circumstances, the procedural exception to section 553 cannot apply.[103] As this court has previously observed:

> Congress was alert to the possibility that these exceptions might, if broadly defined and indiscriminately used, defeat the section's purpose. Thus, the legislative history of the section is scattered with warnings that various of the exceptions are not to be used to escape the requirements of section 553. [Citations omitted]. Further, the Senate Committee responsible for considering the APA concluded its report by investing courts with a "duty . . . to prevent avoidance of the requirements of the bill by any manner or form of indirection . . . ."[104]

We would not be true to that duty if we allowed the Secretary to ignore the requirements of section 553 when promulgating rules which, like the present one, substantially affect private parties and resolve important issues without the beneficial input that those parties could provide.

## V. CONCLUSION

Wishing to provide the Secretary with the tools he needs to perform his Medicare responsibilities, Congress empowered him to perform those functions either directly or by contract. The Secretary is free to use that power to require HHAs to deal with intermediaries whenever he deems necessary. However, when he chooses to utilize his authority in that manner he must comply with the procedural requirements imposed by the APA.

The district court correctly held that it had jurisdiction to decide this case and that the Secretary's actions are subject to the notice and comment requirements of the APA. We affirm those holdings.[105] How-

---

**103.** The Secretary argues that our decision is controlled by our prior decision in *Guardian Federal Savings & Loan Association v. Federal Savings & Loan Insurance Corp.*, 589 F.2d 658 (D.C.Cir.1978). In *Guardian* this court held that a rule requiring that the audit of federal savings and loan institutions be performed by private auditors rather than by FSLIC was exempt from the notice and comment provisions of section 553. However, that case is distinguishable. First, unlike HHAs, the Savings and Loans involved in *Guardian* never had the freedom to choose who audited them. Thus, no right was eliminated by the Secretary's action. Second, as pointed out above, the December 1981 instruction did more than foreclose HHAs from dealing directly with the Secretary, it created regions and designated regional intermediaries, actions that further affected HHAs, and which involved issues on which HHA input would have been valuable. The rule in *Guardi-*

an merely stated that the Secretary would not perform the required audit, it did not designate who would perform it. Finally, the potential impact on the Savings and Loan was not clearly outlined in *Guardian*, whereas here Appellees have presented uncontradicted evidence of the potential disruption caused by the December 1981 instruction.

**104.** *American Bus Association v. United States*, 627 F.2d 525, 528 (D.C.Cir.1980).

**105.** The district court ordered the Secretary to comply with the notice and comment provisions of section 553 before attempting to *reassign freestanding HHAs who had elected to use an intermediary.* That order should be expanded to require compliance with section 553 before a rule assigning *any* freestanding HHA to an intermediary.

ever, the court erred in the disposition of Appellees' substantive claim and, to that extent, we must reverse.

*It is so ordered.*